## MARVIN A. LAWRENCE

### *v.*

## HORATIO N. HAGERMAN.

1. ACTION ON THE CASE—*for maliciously suing out a writ of attachment.* An action on the case for maliciously, and without probable cause, suing out a writ of attachment, is maintainable for the injury resulting therefrom to the business, credit and reputation of the defendant therein, notwithstanding the statute requires the plaintiff in the attachment suit to give a bond conditioned to pay all damages that may be occasioned by the

wrongful suing out of the writ. It is a more complete remedy, of which a party may avail independent of the statutory remedy.

2. The remedies by an action on the case, and upon the bond, may be concurrent, to a certain extent. Actual damages, such as direct loss on the property attached, expenses incurred in defense of the suit, may be recovered in an action on the bond. But for loss of credit, breaking up of business, loss of customers and injury to reputation, resort must be had, to obtain full indemnity, to an action on the case for malicious prosecution, under the common law.

3. EVIDENCE — *in action for malicious prosecution.* In an action on the case, for maliciously, and without probable cause, suing out a writ of attachment, evidence was offered by the plaintiff which tended to show, negatively at least, that there was no probable cause for suing out the writ, and such evidence was held to be legitimate and proper.

4. ALLEGATIONS AND PROOFS — *in such case.* In an action on the case for maliciously, and without probable cause, suing out a writ of attachment, and causing the same to be levied upon the goods and chattels of the plaintiff, it was averred that, by reason of such wrongful act, the plaintiff sustained special damage in the depreciation of the value of the property levied on, and the expenditure of large sums of money in the defense of the action, and as general damages, that his business was broken up, and his credit and reputation impaired and destroyed. It was *held,* the averments were broad enough to admit of proof of all the injuries sustained in consequence of the wrongful act, including loss of character, credit and business.

5. MEASURE OF DAMAGES — *in suit for maliciously suing out writ of attachment.* In such action it appeared the defendant in the attachment was engaged in the grain and produce business, and, while shipping produce to market, the attachment was sued out and levied upon the same. It was *held,* that in the action for maliciously, and without probable cause, suing out the attachment and procuring the same to be levied, the nature, character and amount of business transacted by the plaintiff, at and before the date of the wrongful levy, its complete destruction thereby, and the extent to which his credit and financial reputation were impaired, as well as the actual loss upon the stock levied on, and the expenses of the defense of the attachment suit, were all matters which constitute proper elements to be considered in estimating the damages.

6. In such a case the jury are not confined to the actual damages, if the wrongful act was wantonly and maliciously committed, but they may give exemplary damages.

7. The plaintiff cannot recover his taxable costs incurred in the attachment suit, for which he already has judgment, but he may recover counsel fees therein, and other expenses incident to the defense of the attachment.

8. INSTRUCTIONS. The rule is, that instructions given for the plaintiff and defendant must be construed together, and, when so considered, if they state the law correctly as a whole, an error which may appear in one series will be deemed corrected by the other.

9. NEW TRIAL — *verdict against the evidence.* The finding of a jury will not be disturbed in the appellate court, unless it is clearly against the weight of the evidence.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action on the case, brought by Hagerman against Lawrence and others, to recover damages for the wrongful and malicious suing out by the defendants of a writ of attachment, without probable cause, and causing the same to be levied upon the goods and chattels of the plaintiff.

In the first count of the plaintiff's declaration, which is substantially like the others, it is alleged that the plaintiff was engaged in the business of buying and selling grain, stock and other products, and was constantly shipping the same to Chicago for sale, which was his main market therefor, his business being large and constantly increasing. Averring that the plaintiff had shipped to Chicago four car loads of hogs, of great value, to wit, of the value of $3,500, and which were lawfully in the possession of and the property of the plaintiff, in which all his capital for the conducting of his said business had been invested; that the defendants, well knowing the premises, but contriving and wrongfully, maliciously and injuriously intending to injure the plaintiff, and to deprive him of the profits he otherwise would have derived from conducting his said business, and from the sale of his said produce, and to break up his said business and employment, and cause him to be greatly aggrieved and injured in the premises in that behalf, wrongfully, unjustly and maliciously and without probable cause therefor, caused and procured to be issued out of the superior court of Chicago, a writ of attachment, etc., and wrongfully, injuriously and maliciously caused the same to be levied on the prop-

erty of the plaintiff, to wit, two hundred and forty-nine hogs, of great value, to wit, of the value of $3,500, and caused and procured the said hogs, by virtue of said writ, to be kept and detained in the custody of the sheriff for a long space of time, etc.

In reference to the injury thereby occasioned, it is alleged " that the said plaintiff, in order to get possession of said goods, or the proceeds of the same, was forced and obliged to pay out a large amount of money, to wit, the sum of $1,200, in attorney's fees and costs, and charges and other expenses in the litigation which said defendants forced upon said plaintiff in the said court and in the supreme court of the State of Illinois, and the said plaintiff has been and is by means of the premises greatly injured and damnified in his credit and circumstances. * * * * And plaintiff says, that by means of the premises aforesaid, and the wrongful and injurious acts of the said defendants toward him, his business aforementioned was broken up and destroyed, and the profits that would have otherwise accrued to said plaintiff from the prosecution of and conducting of said business were wholly lost, and the profits that would otherwise have accrued to said plaintiff from the sale of said property of plaintiff, so seized and attached as aforesaid, was wholly lost to said plaintiff, and the said property so attached as aforesaid by means of the premises was greatly depreciated in value, and in order that the same might not be rendered totally valueless, the plaintiff was forced and obliged to consent to a sale of said property by the sheriff at a rate and price greatly below the real value of said hogs, and that such sale was attended with great expense which was taken from the proceeds of such sale and the balance of the proceeds detained and kept in possession by the sheriff of said county. And the plaintiff says, that by reason of the premises aforesaid, he lost a large amount of money, to wit, the sum of $1,000, on the sale of said hogs. And he further says, that by reason of the wrongful and injurious acts of the defendants aforesaid, he was unable to meet his engagements or conduct his business,

whereby he was greatly injured in his credit and circumstances and reputation. And he states that by reason of such injurious acts by said defendants aforesaid, his business was broken up and his means of obtaining a livelihood taken away. And by means of the false and malicious averments in the said affidavit of said Lawrence, and upon which said writ of attachment was founded, his business reputation, and credit were greatly injured, to wit, at the county of Cook aforesaid, to the damage of said plaintiff of $6,000."

And in another count, the plaintiff averred, as a consequence of such wrongful acts of the defendants, " that his reputation as a business man was greatly injured by the false and malicious affidavit upon which said writ was based, and which was made by said Marvin A. Lawrence, charging the said plaintiff with fraud."

The trial in the court below resulted in a verdict against Lawrence for $2,000, upon which judgment was rendered. Thereupon the latter took this appeal.

Mr. M. F. TULEY, Mr. J. N. BARKER, Mr. WILLIAM HOP-KINS and Mr. T. J. TULEY for the appellant.

An action on the case will not lie for malicious prosecution, in the wrongful suing out of a writ of attachment, without probable cause.

At common law no action will lie for a *malicious* prosecution of a *civil* suit, without cause, where there is no arrest. *Savil* v. *Roberts*, 1 Salk. 14; *Gorton* v. *Brown*, 27 Ill. 499.

A different rule is laid down in Drake on Attachments, chapter 39, section 726, but the authorities cited in support of the rule do not seem to justify the conclusion of the author.

Messrs. SPAFFORD, McDAID & WILSON, for the appellee.

An action on the case will lie for maliciously suing out a writ of attachment without probable cause.

In *Chapman* v. *Pickersgill,* 2 Wils. 145, an action on the case was sustained for falsely and maliciously suing out a commission of bankruptcy, wherein the court cited 5 Mod. 407, 8, 10; id. 218; 12 id. 210, 273; Bulwer's Case, 7 Rep. 1; 1 Ro. Abr. 101; 1 Ven. 86; 1 Sid. 464.

This case furnishes a complete answer to the position taken by appellant against the maintenance of this action. But we are not without precedents in our own country, in States having statutes authorizing attachments and requiring the creditor to give bond. *Fortman* v. *Rottier,* 8 Ohio N. S. 548; *Tomlinson* v. *Warner,* 9 Ohio, 103; *Spengler* v. *Davy,* 15 Gratt. (Va.) 381; *McLaren* v. *Birdsong,* 24 Ga. 265; 29 Cal. 644; *Hill* v. *Palron,* 38 Mo. 258; *Bump* v. *Belts,* 19 Wend. 421; *Pierce* v. *Thompson,* 6 Pick. 192; *Robinson* v. *Kellum,* 6 Cal. 399.

These cases are in addition to those cited in Drake on Attachments, which have already been commented upon by appellant in his brief.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The questions presented by this record, upon which appellant relies to reverse the judgment, arise mainly upon the errors assigned which question the rulings of the court in the admission and rejection of evidence, and in the giving and refusing of instructions. Upon the errors assigned the appellant makes three other distinct points. First, that the rule for ascertaining the measure of damages was incorrectly stated, Second, that the verdict is wholly unsupported by the evidence and is excessive, and Third, that the action will not lie.

The objections to the admission of evidence are too numerous to be noticed in detail, but they may all be grouped under one general objection, viz. : that the evidence to show the extent of the injury by the wrongful act complained of, to the business, credit and reputation of the appellee, was inadmissible under the averments of the declaration. There are some minor

objections to the form of the questions propounded to the witnesses, and the order in which the testimony was presented, which we do not deem material to be considered.

The general objection to the instructions given for the appellee raise the same question as that taken to the admission of improper evidence, and they may properly be considered together.

The action is founded in tort, for maliciously suing out the process of a court. The averment in the declaration is, that the appellant " wrongfully, unjustly and maliciously, and without probable cause therefor," sued out a writ of attachment under the attachment act, and with a malicious and wrongful purpose caused the same to be levied on the goods and chattels of the appellee. It is alleged that, by reason of the premises, the appellee sustained special damage in the depreciation of the value of the property levied on, and in the expenditure of large sums of money in the defense of the action, and, as general damage, that his business was broken up, his credit and reputation impaired and destroyed.

The testimony offered to which objections were interposed tended to show, negatively at least, that there was no probable cause for suing out the writ. This was a material averment and it was necessary to be proven. The evidence offered for that purpose was legitimate and proper.

The main objection taken is to the evidence offered to establish the measure of damages. It seems to us that the averments in the declaration are broad and comprehensive enough to admit of evidence of all the injuries sustained in consequence of the wrongful act alleged. For the purpose of estimating the extent and magnitude of the injury, the court permitted the appellee to introduce evidence of the nature, character, and amount of business transacted at and before the date of the wrongful levy, and also evidence of the complete destruction of that business, and of the extent to which the credit and financial reputation of the appellee were impaired, and also evidence of the actual loss of the stock levied on, and of

the expenses incurred in and about the defense of the suit. No reason is perceived why these facts do not constitute proper elements for the consideration of a jury in estimating the damages occasioned by the tortious act of the appellant. The evidence was pertinent to the issue made by the pleadings and the issue stated was broad enough to admit the proof.

In actions on the case the party injured may recover from the guilty party for all the direct and actual damages of the wrongful act and the consequential damages flowing therefrom. The injured party is entitled to recover the actual damages and such as are the direct and natural consequence of the tortious act.

In this instance the amount of money actually paid out in and about the defense of the suit, and the depreciation of the value of the stock on which the wrongful levy is alleged to have been made, are not the only damages sustained, if the appellant wrongfully, unjustly and maliciously and without probable cause sued out the writ of attachment and caused the same to be levied in the manner charged. The business of the appellee had hitherto been prosperous, his credit and financial reputation good, and all were destroyed by the malicious acts of the appellant, if it be conceded that he was guilty as alleged. It cannot be said that the law will afford no redress for the destruction of financial credit and reputation, or mete out no measure of punishment to the guilty party who wantonly and maliciously destroys them. The reputation and credit of a man in business is of great value, and is as much within the protection of the law as property or other valuable rights. And if it be true that the appellant has maliciously, by his wrongful act, destroyed the business, credit and reputation of the appellee, the law will require him to make good the loss sustained. *Chapman* v. *Kirby*, 49 Ill. 211.

The instructions given for the appellee announce these principles with sufficient accuracy. The jury were correctly told that in estimating the damages they might take into consideration any injury shown by the evidence that the appellee sus-

tained in his business and reputation, together with the losses actually sustained by the wrongful suing out of the writ of attachment. The jury were also instructed that they were not confined to the actual damages, if the wrongful acts were wantonly and maliciously committed, but they might give exemplary damages. Such is the well established rule of the law.

It is objected that the jury were not told in the instructions given for the appellee that he could not recover for his taxable costs in the former suit, in this form of action.

The rule is, that the instructions given for the plaintiff and the defendant must be construed together, and when so considered, if they state the law correctly as a whole, the error that may appear in one series will be deemed corrected by the other. In this instance the jury were distinctly told, in an instruction given on behalf of the appellant, that the appellee could not recover his taxable costs in the attachment suit, in this form of action, and this instruction must be held to have modified the appellee's instruction to that extent.

The principle of awarding damages seems to be the same whether the prosecution is by indictment or by civil proceedings, and if the prosecution in either case is malicious and without probable cause, the jury are not confined to the actual damages proved, in estimating the damages, but they may, in the exercise of a sound discretion, give exemplary damages, and although the party may not recover taxable costs, if he has judgment for the same, yet he may recover counsel fees and other expenses incident to the defense of the suit. 2 Greenlf. Ev., § 456.

The instructions considered together state the true rule for ascertaining the measure of damages, and no error that would mislead the jury on the facts involved appears, and they must therefore be held to be substantially correct.

It is insisted that an action on the case for maliciously suing out a writ of attachment cannot be maintained. The objection proceeds on the ground that, inasmuch as the statute

requires the plaintiff in attachment to give bond, with security, conditioned to pay all damages in case the writ is wrongfully issued, before obtaining the process, the remedy is confined to an action on the bond. We think the objection taken is not tenable, certainly not to the extent insisted upon by the counsel. The remedies by an action on the case and upon the bond may be concurrent to a certain extent. Actual damages, such as direct loss on the property attached, expenses incurred in defense of the suit, may be recovered in an action on the bond. But for loss of credit, breaking up of business, loss of customers and injury to reputation, resort must be had, to obtain full indemnity, to an action on the case for malicious prosecution, under the common law.

In *Bump* v. *Wight*, 14 Ill. 301, it was held, that such an action could be maintained for wrongfully suing out a writ of *ne exeat*, notwithstanding the party suing out the writ was required to give bond before instituting the proceeding.

Mr. Drake, in his work on Attachments (§ 754), says: " It has been uniformly held in this country that an attachment plaintiff may be subjected to damages for attaching the defendant's property maliciously and without probable cause. The defendant's remedy in this respect is not at all interfered with by the plaintiff having, at the institution of the suit, given bond with security to pay all damages the defendant may sustain by reason of the attachment having been wrongfully sued out."

We have examined the cases referred to in support of the text, and find the doctrine fully sustained. *Sanders* v. *Hughes*, 2 Brevard, 495; *Bonnell* v. *Jones*, 13 Ala. 490; *Smith* v. *Story*, 4 Humph. 169; *Pettit* v. *Mercer*, 8 B. Monr. 51; *Senecal* v. *Smith*, 9 Rob. 418.

The case of *Chapman* v. *Pickersgill*, 2 Wils. 145, was an action brought for falsely and maliciously suing out a commission of bankruptcy. An objection, like the one taken in this case, was urged, that the action would not lie, there being a remedy given by the statute. It was held that the action

was maintainable at common law, independent of the statute, which provided a remedy. There is great force in the reasoning of the Lord Chief Justice who delivered the opinion of the court, where he said : " This is an action for a tort; torts are infinitely various, not limited or confined, for there is nothing in nature but may be an instrument of mischief, and this of suing out a commission of bankruptcy, falsely and maliciously, is of the most injurious consequences in a trading community." This brief paragraph embodies the true philosophy of the law. The law has wisely provided a remedy, ample in its scope, for all the consequences that may naturally flow from every wrongful act.

In this instance the grounds of the action are, that the writ was falsely and maliciously, and without probable cause, sued out, and by reason of the premises, the appellee's business was broken up, and his credit and financial reputation impaired. The remedy by action on the bond, would not afford complete indemnity, and would not extend to the consequential damages sustained, and hence resort must be had to the common law action on the case for malicious prosecution. If such an action can not be maintained, it necessarily follows that there are injuries flowing from wanton and malicious acts, for which the law would afford no redress. Our remedial laws will bear no such narrow and illiberal construction. For every injury to property, credit or reputation, the law has provided an appropriate remedy.

In *Gorton* v. *Brown*, 27 Ill. 499, it was said by this court, that the action will lie, for it is reasonable that, when an injury is done to a person, either in reputation, property, credit, or in his profession or trade, he ought to have an action of some kind to repair himself.

We perceive no reason for making a distinction in cases of malicious prosecution instituted on criminal charges or in civil actions. The consequences may be ruinous in either case. A man's business, credit and reputation may be as effectually

destroyed by a malicious prosecution in a civil action as upon a criminal charge.

We entertain no doubt, upon principle and upon authority, that an action on the case for maliciously and without probable cause, suing out a writ of attachment, is maintainable for the injury of the business, credit and reputation of the defendant, notwithstanding the statute has required the plaintiff to give a bond, conditioned to pay all damages that may be occasioned by the wrongful suing out of the writ. It is a more complete remedy of which a party may avail, independent of the statutory remedy. *Chapman* v. *Pickersgill*, 2 Wils. 145 ; *Fortman* v. *Rottier*, 8 Ohio, 548 ; *Bump* v. *Betts*, 19 Wend. 421.

It is insisted that the verdict is not only unsupported, but that it is against the weight of the evidence, and that it is excessive and oppressive in its amount.

We have carefully considered the evidence, and find that there is testimony from which the jury could properly find that the writ was sued out and the levy made without any probable cause, and that there were no grounds, whatever, that would justify the appellant in resorting to such violent measures to enforce the collection of his debt. The evidence negatives the inference that the appellant, as a reasonable man, could have entertained the belief that the appellee was about to leave the State, with a view to remove his property, or that he was about to incumber or dispose of his property, with a view to hinder or delay his creditors in the collection of their just debts. We must, in all such cases, rely largely upon the verdict of the jury, as presenting the truth. It was a question of fact, submitted to the jury for their determination, and we can not say that their conclusion is not warranted by the evidence. It has been repeatedly held, by this court, that where the jury have passed on the questions of fact involved, under proper directions from the court, their finding will not be disturbed in the appellate court, unless it is clearly against the weight of the evidence.

We can not regard the verdict as being excessive, in view of

all the consequences that followed from the suing out of the writ, if it was, in fact, malicious and without probable cause, as the jury have found. The loss on the stock, and the money actually paid out in the defense of the suit in the circuit and supreme courts, amounted, according to the version of the appellee's testimony, to between $70·) and $1,000. The evidence is uncontradicted, that, at and before the date of the levy under the attachment writ, the appellee was doing a prosperous business, with a good and advantageous credit. His business was utterly broken up, and his credit impaired, by the ill-advised and inconsiderate act of the appellant. The act of the appellant was hasty and inconsiderate, to say the least of it. There is evidence, if the jury gave full credence to it, from which they could find that he acted with express malice. The law, however, would imply malice from the want of probable cause.

We think that the case was fairly presented to the jury, and their finding can not be disturbed. Many of the errors complained of in the rejection of evidence were cured in a subsequent part of the trial, by the admission of the evidence objected to. That some slight errors may appear in the record, is more than probable; but we are unable to detect any substantial error for which the judgment ought to be reversed.

The instructions, taken and considered together, state the law with sufficient accuracy, and could not have misled the jury on the controverted facts.

We are satisfied that substantial justice has been done, and that, if a new trial should be awarded, and the trivial errors that appear in the record corrected, the result in the end would be the same. It would avail the appellant nothing to award a new trial on the evidence presented in the record. It appears, affirmatively as well as negatively, that there was no probable cause for suing out the writ of attachment, and the consequences to the appellee were most disastrous, and the appellant cannot escape liability for the injuries occasioned by

his unwarrantable acts.    A verdict that would hold him guilt-
less, under any view that we have been able to take of the
case, could not be permitted to stand.    There is but little in
the record, under the most favorable view, that palliates the
conduct of the appellant.

The judgment must be affirmed.

*Judgment affirmed.*