## Toledo, Peoria & Western Railway Company v. Jesse Hammett.

### Gen. No. 4,362.

1. CONTRIBUTORY NEGLIGENCE—*what is not, as a matter of law.* Held, that contributory negligence as a matter of law is not established where it appears that the plaintiff just prior to his injury was walking upon the track of the defendant with his back to a train which at the time he started upon such track was standing still and which in order to reach the point where the plaintiff was, had to 'cross a public street, inasmuch as the plaintiff under such circumstances had a right to rely upon the defendant's performing its duty and giving warning before it undertook to cross such public street.

2. VERDICT—*when, will not be disturbed.* Where the evidence in a case is conflicting, it is the province of the jury to determine its weight and credibility; and where their finding has been approved by the trial court, the same will not be disturbed upon appeal unless clearly and manifestly against the weight of the testimony.

3. DUE CARE—*instruction upon, where plaintiff's hearing was defective, held not erroneous.* In this case the plaintiff's hearing was defective and an instruction in his behalf as follows: "You are instructed that if you believe the plaintiff was old or his hearing defective, yet that would not excuse him from the obligation to exercise due care. He was bound to exercise that degree of care that an ordinarily prudent person, whose hearing was so defective, should have exercised under the circumstances shown in evidence,"— is held not misleading.

4. INSTRUCTIONS—*how to be construed.* Instructions are to be read as a series and the omissions of one may be cured by the contents of another.

Action on the case for personal injuries. Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

STEVENS & HORTON, for appellant.

JOSEPH A. WEIL and F. J. QUINN, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

Appellee was a crossing policeman or watchman in the city of Peoria. He was appointed by the mayor, and at the time of his injury his station and duties were at the

crossing of Water and Walnut streets. Water street runs in a northeasterly and southwesterly direction, which we will hereafter call north and south, and is crossed by Walnut street at right angles. A portion of Water street at the crossing, probably a little more than the east half of it, is occupied by railroad tracks, five in number, running in the same direction of the street and belonging to different companies. The track farthest west is called in this record track No. 1 and the next one to it No. 2. West of track 1 at the Walnut street crossing and for some distance south, there is about forty feet of the street not occupied by railroad tracks. A space at this street-crossing, twenty-four feet wide, was planked between the tracks for a crossing. This planking was not in the center of Walnut street but the south side of it was about the south line of the street. On the morning of April 16, 1903, at about seven o'clock, as appellee was passing over the tracks at the Walnut and Water street crossing going to his shanty, which was just at the southeast of the plank we have referred to, he was struck by a pay-car to which an engine was attached backing toward the depot, and seriously injured. The union depot is just south of the street-crossing. On the morning in question the engine and pay-car that caused the injury were moved north of the depot and across Walnut street for the purpose of letting a passenger train out on what is called an east-bound main track. It was the purpose of those in charge of the engine and pay-car to follow the passenger train. The engine was at the north end of the pay-car and pulled the car across Walnut street until the rear or south end of the car stood about the north street line of Walnut street and some distance north of the plank on the crossing. On track No. 1, which was just west of the track occupied by the engine and pay-car, were some freight cars extending south into Walnut street a little beyond the rear end of the pay-car. When the pay train stopped north of Walnut street the conductor got off and came back south of the planking on the street-crossing to the switch tender, Smith, to give him some directions about

letting his train out. The engineer and fireman were in the cab of the engine. While the situation was as thus described appellee started diagonally across the Walnut and Water street crossing southeast to his shanty. He passed over the west track, or track No. 1, and while proceeding south between tracks 1 and 2, was struck by the steps or railing at the rear end of the pay-car which backed down on him from the north. Appellee was awarded a verdict for $1,593.50 upon which the court, after overruling a motion for a new trial, rendered judgment.

Appellant's argument is mainly devoted to the proposition that the verdict and judgment are contrary to and not sustained by the evidence. Appellee's testimony was that when he passed track No. 1 he saw the south end of the pay-car but saw no engine; that it was standing still and he took it to be a freight car; that he then turned with his face toward the south and while walking in the space between tracks 1 and 2 was struck by the pay-car backing down upon him, and that no bell was rung or whistle sounded before the train started to back up, nor any warning given him of its approach, before he was struck. Frank M. Moore, a traveling man whose home was at Aurora, testified that he was on his way to the union depot and saw appellee just as he was struck and knocked down and that he heard no signal given either by bell or whistle. Lawrence Lane testified that he saw the accident; that he was standing at appellee's shanty waiting for him when it occurred; that when he first saw appellee he was going diagonally across, five or six feet south of the box cars standing on track No. 1 and which extended a little south of the pay-car, and that after he crossed the track he walked south between tracks 1 and 2 about fifteen feet before he was struck. The witness saw the pay train backing down toward him and says he hallooed at him when it was some eight or ten feet from him and the witness some fifty feet away, and that he heard no bell nor whistle and that the train was started suddenly. He says he never saw appellee look back in the direction from which the train came.

On behalf of the defendant the engineer testified that he was in his proper place on the right hand side of his engine, which was the opposite side from the direction appellee came, and therefore could not see him; that he was looking back at the conductor for signals, and that when he received the signal to back he started the bell to ringing, and also gave three blasts of the whistle. He testified the bell was rung with an automatic ringer and was not stopped after he started it until the accident occurred. Langenberg, the fireman, testified that he was on the left hand side of the engine looking backward before they started to back up, but on account of the box cars on track No. 1 west of them he could not see appellee until he passed over that track; that he saw him just as he was struck and hallooed to the engineer. He also testified that the bell was started ringing before they started to back up, and also that the whistle was blown. Smith, the switch tender, testified that the conductor was standing about twenty feet south of the plank on the Walnut street crossing when he signaled the engineer to back up; that before the train moved the bell was started ringing, and continued to ring until the accident. He says he first saw appellee when he was crossing track No. 1; that he didn't think he looked toward the approaching train but walked right into it, and that the conductor hallooed to him twice just as he was about going on track No. 1, and that the distance between tracks 1 and 2 is about eight or ten feet. W. M. Terrill, who was the conductor on the pay train, testified that when his train pulled up north of Walnut street he got off and went back to see the switch tender who was south of the crossing; that when he first saw appellee he was about to step on track No. 1 going in a diagonal direction southeast; that he never saw him look toward the train, and as he was going over the track hallooed to him, but as he did not stop, signaled to the engineer to stop, which he did at once. He testifies that the bell was ringing.

While the foregoing is not intended as a full statement of the evidence it is believed to be a brief summary of the

most vital points in the testimony. Appellee seeks to sustain his right to recovery upon the theory that he was passing over a public street to his place of business, and that he had the right to assume the car he saw standing on track No. 2 would not be moved south over the public street crossing without first sounding some warning, and that under such circumstances it was not contributory negligence in him to walk alongside the track without looking backward. Appellant's contention is that the signals and warnings were given before the train started to move; that it was in motion when appellee passed over track 1, but he, without looking, walked across the space between tracks 1 and 2, a distance of from eight to ten feet, and was there struck by the steps or railing of the car—as some of the witnesses say, "walked right into it." It was shown by the evidence that appellee's hearing was to some extent impaired, and that he had a thin "jersey" pulled down over his ears at the time of the injury. There is no question but that appellee could by turning and looking have seen the train approaching, but the question is, was it, under the circumstances, his duty so to do, or was his failure so to do such negligence as will preclude a recovery. Appellant cites a large number of cases as to the duty of persons about to cross a railroad track to look and listen, but it is believed that those authorities are not applicable to this case. If appellee's story is to be believed, he saw the train before he reached the place where he was injured, but it was standing still at the time, and no engine attached to the south end of it. To move south it would have to pass over a public street crossing. Appellee was going south, and to do so must necessarily turn his back toward the train. It would have been unlawful for appellant to run its train back over a public street without giving some signal, either with bell or whistle, and appellee insists that he was not negligent in walking as he did, and assuming that appellant would perform its duty by giving warnings, and this he claims was not done. If this contention is established by the evidence we are unable to see why there could not be a recovery.

We believe appellee had a right under such circumstances to rely upon appellant performing its duty by giving a signal before undertaking to move its train south over the public street. This would not, of course, justify him in recklessly and needlessly placing himself in known danger, but we are not prepared to say, walking along the side of the track on which he had a moment before seen the train standing still, was negligence. The fact that appellant might run the train over the street without doing its duty would hardly require appellee to walk backward, or to keep his face turned back in the direction of the car.

If, on the other hand, the bell was rung and whistle sounded, as claimed and testified to by appellant's witnesses, and appellee in disregard of the warnings put himself in the position he was in when struck, he would not be entitled to recover. The evidence being conflicting upon material elements in the case it was the province of the jury to determine its weight and credibility, and their finding when approved by the trial court is entitled to great weight in an appellate tribunal and will not be disturbed unless clearly and manifestly against the weight of the testimony. Bishop v. Busse, et al., 69 Ill. 403; Shevalier v. Seager, 121 Ill. 564; Lourance v. Goodwin, 170 Ill. 390. Appellee and two of his witnesses testified that they heard no bell nor whistle and that they were close enough to have heard them if they had been sounded. On the other hand the engineer, fireman and conductor, and the switch tender, who was not an employee of appellant, testified that the signals were given; the engineer and fireman that the whistle was sounded and bell rung; and conductor and switch tender that the bell was rung. It is argued that as four witnesses testified signals were given and only three that they were not, and these three not of the positive nature as the testimony of the four, that the evidence would not sustain a verdict based upon the allegation that the signals were not given. It should be remembered that the weight of evidence is not to be determined alone by the number of witnesses who swear on

opposite sides of a question. True, we would ordinarily say that a fact asserted by the testimony of one witness and denied by the testimony of two, could not be said to be established, but there may be something in the manner of the two and their manner of testifying, or some other circumstance appearing in the trial, that would give their testimony less weight and credit than that of the one. Necessarily, it must be left to the jury and trial court, who see the witnesses and hear them testify, to weigh the evidence and determine on which side is the preponderance, and that determination will not be interfered with, as we have before said, unless clearly and palpably wrong, and we cannot say that is true in this case.

Appellant's chief complaint of the rulings of the court upon instructions asked by it is as to the modification of instruction numbered in the abstract 3. That instruction was as follows: "You are instructed that if you believe the plaintiff was old or his hearing was defective, yet that would not excuse him from the obligation to exercise due care. He was bound to exercise that degree of care that an ordinarily prudent person would have exercised under the circumstances shown in evidence. And the law is, that any defect in hearing not only did not excuse him from the exercise of care, but it required of him the greater use of his other senses, to discover whether a car was approaching. If he failed to exercise such care, then he cannot recover, and your verdict should be not guilty." The court refused to give this instruction as asked, but modified it and gave it as follows: "You are instructed that if you believe the plaintiff was old or his hearing defective, yet that would not excuse him from the obligation to exercise due care. He was bound to exercise that degree of care that an ordinarily prudent person, *whose hearing was so defective*, should have exercised under the circumstances shown in evidence." It will be seen that the instruction so far as it was given is the first two sentences of the one asked, and is in almost the exact language asked except the clause in italics, which was inserted by the court. As asked, the instruction told

the jury that appellee was " bound to exercise that degree
of care that an ordinarily prudent person would have exer-
cised under the circumstances shown in evidence." Counsel
argue that by the modification the jury would understand
a different degree of care is required of persons " whose
hearing was so defective," than of those who are in posses-
sion of all their faculties unimpaired. If the jury would
understand from the language used that a less degree of
care is required from the former than the latter, then the
instruction would be clearly erroneous and prejudicial. The
impairment of the faculty of hearing certainly does not
relieve one in any degree of the duty of exercising care
and caution for their safety that is required of people
whose hearing is unimpaired. The instinct of self-pres-
ervation would ordinarily prompt persons with impaired
hearing or vision, or both, to greater caution in approach-
ing and passing over railroad tracks than would be expected
of one in the full possession of these faculties unimpaired.
That being true, it appears to us that the modification com-
plained of would not be so likely to be understood to mean
that a less degree of care should be required of one whose
" hearing was so defective " than from one whose hearing
was sound, as it would be to mean that a greater degree of
care and caution should be expected from one with defect-
ive hearing. The modification was unnecessary and did
not help the instruction, but we cannot say that it was cal-
culated to mislead the jury to the prejudice of appellant or
that there is any probability that it was misunderstood to
appellant's detriment. Moreover, at appellant's request
the court instructed the jury that it was appellee's duty
" to make reasonable use of his senses of sight and hearing
to ascertain before attempting the crossing whether a train
was approaching."

Complaint is made of the ruling of the court in giving
appellee's first, second and fourth instructions. The sec-
ond instruction is almost in the exact language of the
instruction that was condemned in N. C. St. R. R. Co. v.
Cossar, 203 Ill. 608. The ruling of the court in the Cossar

case should be considered in connection with the facts and circumstances as they appeared in evidence in that case, and we are of opinion what was there said cannot be held to be conclusive of the instruction here involved. The instruction complained of is as follows : "The court instructs the jury that by ordinary care in this case, the law means such a degree of care, under the circumstances and in the situation in which the plaintiff was placed, so far as may be shown by the evidence, as an ordinarily prudent person would exercise under the same circumstances and in like situation to avoid danger." The criticism of appellant to this instruction is that by it the jury would understand that all that was required of appellee was that he should be in the exercise of due care for his own safety at the exact time of the accident, and that they would understand no consideration should be given to his conduct just prior to the accident, in placing himself in the position he was in when injured. We cannot believe appellant was injured or prejudiced by this instruction having been given when we consider all the evidence and the other instructions given in the case. It has been repeatedly held that all the instructions in the case are to be considered as one series, and read and construed together. Lawrence v. Hagerman, 56 Ill. 68; Lourance v. Goodwin, 170 Ill. 390; Central Railway Co. v. Bannister, 195 Ill. 48. The last clause of appellee's third instruction was as follows : "and further believe from the evidence that the plaintiff *at and before* the time of said injury was exercising due and reasonable care and caution for his own safety, then your verdict should be for the plaintiff." By appellant's second instruction the jury were told that they had no right to assume that plaintiff exercised due care, but that the burden was on plaintiff to prove due care. By the sixth instruction given for appellant the jury were told that if they believed from the evidence plaintiff was familiar with the location where the injury occurred, "then it was his duty, in approaching it on the morning in question, to exercise caution commensurate with the danger thereof. He was bound to recognize that an engine or train might be com-

ing and to exercise care accordingly. If you believe from the evidence that he walked directly up to and upon the crossing, and that had he looked, he would have discovered the approaching car and avoided his injury, and that such precaution was reasonable under the circumstances in evidence, then he was bound so to do, and if he failed to take such precaution and was injured in consequence, he was guilty of negligence, and cannot recover in this suit, and your verdict should find the defendant not guilty, whether you believe it was negligent or not." By the seventh instruction given for appellant the jury were told " he was bound to know that an engine or train might be coming along the track at any time, and it was his duty to exercise care accordingly." By the tenth instruction the jury were informed that "it was his duty to make reasonable use of his senses of sight and hearing, to ascertain, before attempting the crossing, whether the train was approaching, or to use reasonable means to ascertain if it was safe to make the crossing, and if he neglected to do this, but ventured upon the track without due care and caution, and was injured in consequence, then he cannot recover, and you should find the defendant not guilty." The most that can be said against the instruction complained of is that it was possible to construe it, standing alone, to limit the duty of appellee to exercise care for his safety to the exact time of the injury; but when it is considered in connection with the other instructions referred to, it seems to us it could not have been so understood and construed by the jury. We cannot believe it was possible for the jury to have been misled by the instruction, or that appellant was prejudiced by it having been given. Appellee's fourth instruction should not have been given because it is meaningless.

We have examined the complaints of appellant as to the other instructions, and are of opinion that there is not sufficient ground or basis for them to justify us in extending this opinion by a further discussion of them.

Being of opinion there is no reversible error in the record, the judgment is affirmed.

*Affirmed.*