## First State Bank of Chester v. John A. Noser.

1. ATTACHMENT WRIT—*when malice presumed in wrongfully suing out.* Malice in suing out a writ of attachment may be presumed from the absence of reasonable or probable cause.

2. DAMAGES—*what evidence of, justifies verdict in action for maliciously suing out writ of attachment.* Evidence of expenses incurred in defending against the attachment and the loss of the use of the property attached, is sufficient to justify a verdict in an action for maliciously suing out a writ of attachment.

Action in tort for malicious prosecution. Appeal from the Circuit Court of Randolph County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1906. Affirmed. Opinion filed March 15, 1907.

A. G. GORDON, for appellant.

RALPH E. SPRIGG, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

In this action appellee charged appellant with maliciously suing out a writ of attachment without probable cause, thereby intending to injure and damage him by the levying of said writ upon his property. Appellant pleaded not guilty and there was a trial by jury and a verdict and judgment in favor of appellee for $375.

The facts upon which this suit are based, as disclosed by the record, are substantially as follows: Appellee, John A. Noser, owned and operated a small mill at Rockwood, some ten miles below Chester in Randolph county, in this State. O. A. Orvis, who was located in St. Louis, Missouri, engaged in buying and selling grain under the name of the Orvis Grain Co., had a number of buyers or agents, buying and shipping grain to him from points in southern Illinois. He had such an arrangement with Taylor, Simmons & Co. at Chester, where appellant was located, and in the latter part of December, 1904, he made an arrangement with appellee to buy corn for him. It was arranged between Orvis and appellant, and appellee was so informed, that when a car was loaded with corn the bill of lading was to be taken to the bank, appellee was to draw a draft on the Orvis Grain Co. which appellant was to cash and forward to St. Louis, with a bill of lading attached, for collection. To bring about this arrangement, the Orvis Grain Co. on December 28, 1904, sent the following letter to appellant:

"Gentlemen: Mr. John A. Noser of Rockwood, Illinois, will ship us through Taylor, Simmons & Co. a few cars of corn. We enclose our check on the Mississippi Valley Trust Co. for $350, which you are to hold as a guaranty that the

draft made on us by Taylor, Simmons & Co. at Rockwood in payment of this corn, will be duly honored on presentation here. We were strangers to all concerned and we agree to do this in order that you might be perfectly willing to cash their drafts. After shipments are all away you can return us this money."

On January 3, 1905, the Orvis Grain Co. again wrote the bank as follows:

"On December 28th we sent you our check on the Mississippi Valley Trust Co. for $350, which you have not acknowledged. This we sent you as a guaranty that the drafts made on us by Taylor, Simmons & Co. or John A. Noser of Rockwood, would be paid on presentation here in St. Louis. We want to arrange so that Mr. Noser can buy corn and when he has it loaded and has secured a bill of lading he can get his money."

On January 4, 1905, a third letter was sent to the bank, saying:

"Did you or did you not receive our check for $350 and get it cashed? We certainly should have some kind of acknowledgment from you. This money we want you to hold as a guaranty that drafts made by John A. Noser of Rockwood will be paid upon presentation here. We want drafts from Noser or Taylor, Simmons & Co. to have bill of lading attached from whatever.car of corn they are drawn for."

On the same day appellant wrote to Orvis Grain Co., saying:

"We received your enclosed check for $350, and are holding same as a guaranty to assure the payment of sight drafts drawn by either Taylor, Simmons & Co. or John A. Noser. This to be returned to you upon your request after all drafts made on account of corn purchased are fully paid. We are to-day sending in S-D with B-L attached for the first car purchased."

In accordance with the arrangements so made Mr. Noser bought corn from the farmers and gave his checks on the

bank. When a car was ready for shipment, he would mail the bill of lading with his draft for the amount to appellant, who would credit him with the amount of the draft and forward it, with the bill of lading attached, to St. Louis for collection. On February 23, 1905, after appellee had forwarded some six loads of corn under the arrangement, the draft in each case having been duly honored, the Orvis Grain Co. wrote to appellant, saying: "We have now established ourselves with you to that extent that we believe it unnecessary for us to longer keep our deposit of $350 with you, as we are needing it here in our business. Should you need any further guaranty as to the payment of drafts from time to time, we will be very glad to have it given you by our bank here," and in compliance with this request, appellant returned the money. Noser continued buying grain and shipping it to appellant, under the arrangement agreed upon, until sometime in May, there being in all some 24 drafts drawn by him and paid by the Orvis Grain Co. On May 4, 1905, a draft was drawn by appellee for $382.45 and five days later another one for $293.04 for corn purchased by him, to each of which a bill of lading was attached for the car of corn. In the bills of lading, the Orvis Grain Co. was mentioned both as consignor and consignee. These drafts were forwarded by appellant to St. Louis for collection, but the Orvis Grain Co. refused to honor them and they were returned unpaid.

Nothing appears in the evidence which could have led appellee to believe these drafts would be treated in a different manner from those formerly drawn by him. On May 22, 1905, appellant by its cashier, made and filed in the office of the clerk of the Circuit Court, an affidavit in attachment, against appellee, in which he stated that appellee was indebted to the bank on account of the two drafts in the sum of $675.49; that the drafts were drawn by Noser upon the Orvis Grain Co. while he had no funds in the hands of said company to pay the same; that appellant advanced the amount mentioned in the drafts to Noser and that the debt was fraudulently contracted on the part of Noser. A bond

was filed and a writ of attachment issued and levied upon the mill property in Rockwood.

The attachment suit was tried in the Circuit Court of Randolph county, on September 20, 1905. A jury was waived and the cause tried by the court. After the evidence for both sides was all in, appellant, who was the plaintiff in that suit, took a non-suit. The attachment suit was in connection with a suit on the drafts. That suit was also decided in the trial court in favor of Noser, and on appeal to this court, the judgment of that court was affirmed and an opinion filed at the August term, 1906. 128 Ill. App., 157. Appellant claims that the attachment suit was not commenced maliciously, that there was probable cause for commencing it and that there was no damage by reason of the levy.

It clearly appears from the evidence that whatever money was advanced by appellants to appellee, was on the credit established by the Orvis Grain Co. and not on the credit of appellee himself; that the charge in the affidavit that the debt was fraudulently contracted by appellee, was wholly unfounded and that appellant commenced the attachment suit without reasonable or probable cause. While the evidence does not clearly show that there was actual malice in the commencement of the attachment suit, yet the law is that malice may be presumed by the jury, from the absence of reasonable or probable cause. Krug v. Ward, 77 Ill., 603; Epstein v. Berkowsky, 64 Ill. App., 498.

In the case of Lawrence v. Hagermann, 56 Ill., 68, it is said by the court: "We perceive no reason for making a distinction in cases of malicious prosecution instituted on criminal charges or in civil actions. The consequences may be ruinous in either case. A man's business, credit and reputation may be as effectually destroyed by a malicious prosecution in a civil action, as upon a criminal charge."

In regard to damages, the proof showed that appellee had expended the sum of $175 in preparing for trial and attorneys' fees, and that the mill property levied upon was closed up for a month or six weeks, after the levy was made. This

was sufficient proof of damages to appellee to warrant the verdict.

We find no material error in the instructions, which appear to have stated the law governing the case with substantial accuracy.

The judgment of the court below will be affirmed.

*Affirmed.*