### Kate A. Moore, Appellee, v. The Aurora, Elgin & Chicago Railroad Company, Appellant.

### Gen. No. 5,069.

1. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

2. EVIDENCE—*competency of contradictory statements.* A statement of a witness made out of court, orally or in writing, if contradictory on a material point to his sworn statement as a witness, may be introduced in evidence not as substantive proof of the truth of such statement, but as tending to discredit the witness.

3. EVIDENCE—*when exclusion of contradictory written statement not ground for reversal.* The exclusion of a written statement made by a witness out of court though contradictory to his sworn testimony, will not reverse if the witness upon the stand has admitted the making of such statement and the contents of the same were read to him in the hearing of the jury.

4. DAMAGES—*when expenditures in endeavoring to effect a cure should not be allowed.* In the absence of proof that the expenditures claimed to have been made in seeking to effect a cure were the usual customary and reasonable charges for the services rendered, no allowance will be permitted.

5. INSTRUCTIONS—*considered as a series.* Instructions should be regarded as a series, should be read together and the omissions of one may be supplied by the contents of another.

Action in case for personal injuries. Appeal from the Circuit Court of Kane county; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the April term, 1909. Affirmed upon remittitur. Opinion filed October 19, 1909.

HOPKINS, PEFFERS & HOPKINS, for appellant.

T. E. RYAN and BOTSFORD, WAYNE & BOTSFORD, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought by appellee against appellant to recover damages for injuries claimed to have been sustained by appellee while alighting from one of appellant's cars. The original declara-

tion consisted of two counts. Subsequently, an amended second count was filed, and later, a third count was added. The third count was amended, the first original count was dismissed by appellee, the second by the court, and a trial was had on the third count as amended. This count alleged that appellee became a passenger upon a car of appellant to be carried to a certain point in the city of St. Charles; the duty of appellant to carry safely and deliver appellee at her destination; that appellant negligently permitted said car and its rear platform to be overcrowded with passengers; that when the car reached appellee's destination, it was stopped; that appellee proceeded with all due diligence to press her way through the crowd and while she was pressing her way through the crowd on the platform, the servants of appellant negligently caused the car to be started; that appellee did not observe that it was in motion, and, in the exercise of due care for her own safety, stepped from said car while in motion, and was thrown violently to the ground and permanently injured, and has been compelled to expend large sums of money in endeavoring to be cured. The plea of not guilty was filed, and on a trial appellee obtained a verdict of $6,125. A motion for a new trial was denied, judgment was entered on the verdict, and the company prosecutes this appeal.

Appellee testified that she notified the conductor when she paid her fare, that she wished to get off at Prairie street; that the conductor made a reply showing that he understood her direction; that when they reached that street, he rang the bell, stopped the car and called out the name of the street; that she arose and passed by the conductor in the crowded aisle, and to the rear platform which was also crowded; that the conductor then started the car but she did not know it; that it was six o'clock at night in December, and dark, and she did not see that the car was moving; that she stepped down, and that was all she remembered.

One Wagner testified for appellant that he was on

the rear platform of the car when appellee started to alight; that he said to her, "Aunty, don't you do it. The car is moving;" that she said, "I have to get off;" that he said, "You stay right where you are and we will stop the car. We will get it stopped and have them fetch you back," that she said, "No, I have to get off, and I can get off," that she jumped and fell; that by that time the car had moved from thirty-five to fifty feet. Appellee, in rebuttal, testified that she never saw the witness Wagner before the trial, and denied that such a conversation took place. There was therefore a direct conflict in the evidence as to whether or not appellee was warned and knew that the car was moving when she alighted. The jury and the court had the opportunity of seeing these witnesses who testified, one against the other, and to note their demeanor while on the stand. They had better means than we have to compare and properly estimate the credibility and value of their evidence. It was within the province of the jury to fully consider, weigh and reconcile the conflict in their testimony, so far as that could be done, and when they were unable so to do, then to reject such portions as they believed were not entitled to credence. The evidence seems to be equally balanced, but for aught we know, the decided weight may have appeared to the jury and the court to have been with appellee. The presumption is that the jury have done their duty and found correctly; that the trial judge, being in a position to determine accurately whether the finding is right, has determined correctly in overruling the motion for a new trial. We must, therefore, leave the question of the credibility of the witnesses and the worth of their evidence, where the law placed it, with the jury, and decline to disturb their finding, since the verdict does not appear to be clearly and palpably against the evidence.

One Millen, a passenger on the car at the time appellee was injured, called as a witness by appellee, stated in his direct examination that he was unable to say whether the car stopped a long or short time; that

he had time to raise up on his feet; that he neither
heard the signal to stop or to go forward; that he did
not remember the starting of the car or exactly how it
started. On cross-examination he stated that he did
not remember making any statement other than the
one he made on the trial. He was then shown a paper
and asked if the signature thereto were his, and he
replied that it was. Upon being asked, if, at the time
he made the statement contained therein, he believed it
to be true, or a substantial statement of the transac-
tion, he answered, "Yes." He was then asked if the
statement, that "The car stopped an unusually long
stop, so long that I looked to see why they stopped so
long," were true when he made and signed it, and he
replied that it was. He was also asked if the state-
ment, "As the car started I saw Mrs. Moore just
coming out of the door onto the platform," were true,
and he said, "It must have been." Upon being asked
if it were true that "She made her way from there to
the step after the car was in motion," he replied,
"Yes, sir." In short, he admitted that the statements
about which he was interrogated were true when made.
Appellant then offered the written statement in evi-
dence, and an objection was sustained to its admission.
It is now argued that Millen's testimony contradicts
his statement in several important particulars, and
that the written statement should have been admitted
for the purpose of impeachment. The statement of
a witness made out of court, orally or in writing, if
contradictory on a material point to his sworn state-
ment as a witness, may be introduced in evidence, not
as substantive proof of the truth of such statement,
but as tending to discredit the witness. However, the
violation of this rule does not always amount to re-
versible error. The witness Millen, in the presence of
the jury, admitted that he made the statements con-
tained in the paper, which statements were read to
him in the hearing of the jury, and that the same were
true when made. His cross-examination was not
restricted or limited, and the jury had as good an op-

portunity to judge of his credibility when questioned as fully as he was as to its contents, as they would had the written statement been admitted in evidence. Its exclusion was not harmful error.

It is contended that the court erred in giving appellee's first, second, fifth, ninth and twelfth instructions. The first was on the measure of damages and enumerated the elements for which appellee might recover if the jury believed that she had made a case, concluding with "as well as moneys expended in endeavoring to be cured of her injuries, if any the evidence shows." The second advised the jury that it was not necessary that any witness should have expressed an opinion as to the amount of damages, but that the jury might make the estimate from the facts and circumstances in proof, and by considering them in connection with their knowledge, observation and experience in business and ordinary affairs of life. This was true as to certain elements of damage for which she was entitled to recover if she proved her case, but it was not true as to money expended in endeavoring to be cured of her injuries.

These instructions would have been free from error had there been no proof of any damages except those arising from physical injuries. Suffering in mind and body, future suffering, loss of health or permanent injury are not capable of pecuniary measurement. Physicians' and nurses' services and the value of medicines and all necessary expenditures made in endeavoring to be cured are elements of damage capable of pecuniary measurement and the law requires that the amounts of such expenditure shall be proved if they are to be recovered. North Chicago Street Railroad Company v. Fitzgibbons, 180 Ill. 466; Keokuk Bridge Co. v. Wetzel, 228 Ill. 253; Village of Chatsworth v. Rowe, 53 Ill. App. 387. The proof showed that Dr. Bishop's bill was $111, Dr. McMaster's $300, Mrs. Poulter's $150, Miss Daily's $25, Miss Davis's $270, Mrs. Merrill's $120, and Dr. Pelton's $15, aggregating $991. Some of the parties named testified to

these amounts, and others were not called.  There was no proof that these amounts were the usual, customary and reasonable charges for such services, nor was there any proof that appellee had bound herself to pay them, or was liable to pay such amounts, nor was there any proof that the contracting of these bills by appellee was necessary or reasonable, in endeavoring to be cured of her injuries.  In the absence of such proof these items were allowed to go to the jury, under these instructions, and we must assume that the jury added them to the amount of the judgment.  This error can be cured by a *remittitur*.

The fifth instruction said to the jury that if appellee directed the conductor to stop the car, and if it were stopped, appellee had the right to assume that the conductor would not cause it to be started until she had a reasonable time to safely alight.  The court instructed the jury at the instance of appellant that if appellee was warned not to attempt to alight, and thereafter did alight, and received the injuries, then she could not recover.  The rule is "that instructions given for plaintiff and defendant must be construed together, and when so considered if they state the law correctly as a whole, the error that may appear in one series will be deemed cured by the other."  Lawrence v. Hagerman, 56 Ill. 68; Lourance v. Goodwin, 170 *id.* 390.  These two instructions read together correctly stated the law, and the jury could not have been misled.

The ninth instruction stated that if the jury believed that appellee had proven her case as laid in the declaration, they should find the issues for appellee.  Appellant contends that the averment in the declaration that appellee did not observe that the car was in motion, but continued through the crowd on the platform, and, in the exercise of due care for her own safety, stepped from said car while in motion, was not equivalent to a charge that she was in the exercise of ordinary care, and that its incorporation into the instruction was erroneous.  If this criticism upon the declaration were

sustained, still appellee's thirteenth instruction told the jury that if they believed, from the evidence, that appellant was guilty of the negligence as charged in the declaration, and that such negligence was the proximate cause of appellee's injuries, they should find appellant guilty provided they further believed from the evidence that appellee, at and before the time of the injury, was in the exercise of reasonable care for her own safety. The words 'at and before the time" as used in the instruction, refer to the period from the time appellee started to leave the car until she fell, leaving it for the jury to determine whether she used due care when she stepped from the car. Peterson v. Chicago Traction Company, 231 Ill. 324; Knox v. American Rolling Mill, 236 Ill. 437. ''The instructions must be taken as a series, and where this is done, and there are other instructions in the series that fully cover the error complained of, it is cured.'' City of Springfield v. Williams, 72 Ill. App. 439.

While appellee's twelfth instruction may be subject to some of the criticisms urged, we do not deem the error harmful.

This opinion will be lodged with the clerk of this court and if, within seven days, appellee will remit $991 from the judgment, it will be affirmed for $5,134, at appellee's costs. Otherwise, the judgment will be reversed and the cause remanded.

Afterwards appellee remitted $991 of the judgment. The judgment is therefore affirmed in the sum of $5,134 at appellee's costs.

*Affirmed upon remittitur.*