Louisa A. Lyman, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 17,473.

1. DAMAGES—*instructions.* Where it appears in a personal injury case that plaintiff had lost time and that the services of physicians had involved heavy expenses, but there is no competent evidence as to the amount of wages lost and the value of the services, instructions as to such elements of damage are erroneous which state that the jury may take into consideration all the facts and circumstances in evidence, the amount of such doctor's bills and the amount lost in wages, and that it is unnecessary for any witness to testify to the amount thereof, but the jury may estimate the amount

"from the facts and circumstances in evidence and by considering the business affairs of life."

2. CARRIERS—*negligence to start car, when.* Where a passenger who has alighted from a street car and when both feet are on the ground discovered that her coat is caught on the platform, is injured by the starting of the car, the company is not relieved from liability by the fact that the conductor, inside the car collecting fares, did not know that the coat was caught.

Appeal from the Superior Court of Cook county; the HON. ALBERT C. BARNES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed December 19, 1912. Rehearing denied January 2, 1913.

FRANKLIN B. HUSSEY and C. LE ROY BROWN, for appellant; LEONARD A. BUSBY, of counsel.

J. K. McMAHON, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This appeal brings up for review a verdict and judgment for $7,000 obtained by appellee for personal injuries. Briefly stated, the facts proved were as follows:

On March 27, 1906, in the forenoon, appellee was riding as a passenger upon a street car belonging to defendant, which was going west on Forty-Seventh Street. The car stopped at Hermitage Avenue to permit appellee and another woman to alight. Appellee stepped down from the rear platform to the street and then discovered that the bottom of her long heavy ulster coat was caught on something on the platform. She attempted to disengage it and at that moment the car started forward. Holding on, with both hands, to something back of or attached to the rear dashboard, she was pulled or dragged along on her feet for a distance of from seven to twenty-five feet, as estimated by different witnesses. The moment the car started, some of the passengers shouted to the conductor, who was inside the car collecting fares, and he rang the emergency bell and stopped the car. Her coat was then

released and she walked to the sidewalk unassisted, but upon reaching the sidewalk she immediately fainted. She was taken to a drug store, and later taken in a carriage to her home. For several years following this accident, she suffered from what one of the physicans termed "traumatic hystero-neurasthenia," and was under the constant care of physicians during nearly all of that period. During the same period she claimed she was unable to continue her usual occupation as a school teacher.

We deem it unnecessary to state the facts more in detail, for the reason that after a careful consideration of the whole record we are of the opinion that the trial court erred, to the manifest prejudice of appellant, in at least two of the instructions given to the jury on behalf of appellee. Appellant did not deny the happening of the accident, but claimed there was no connection between the accident and the injuries alleged to have resulted therefrom. A very large part of a most voluminous record consists of the evidence of physicians, and the evidence regarding the alleged relation of the injuries to the accident is in a state of hopeless and irreconcilable conflict. It is impossible to read even an abstract of this record without becoming convinced that any ordinary jury would be thoroughly impressed with the idea that the injuries of appellee were of such a character as to require the services of specialists in the practice of medicine and surgery, and that the services rendered by them in this case in endeavoring to cure her of her ailments had involved the payment of large sums of money for doctors' bills or the incurring of heavy liabilities for that purpose. While there is much evidence that such services were rendered, there is no competent evidence in the record as to the value of such services. In each count of the declaration is an allegation that the plaintiff "has paid out divers large sums of money for medical and surgical attendance, and for nursing, drugs and medicine, and has become liable to pay

out divers large sums of money for surgical attendance and appliances," etc., etc.

The court gave two instructions on behalf of appellee which were the only instructions given on the measure of damages. In one (instruction No. 19) the court instructed the jury that if they found for the plaintiff, and that she had sustained damages "as charged in the declaration, then to enable the jury to estimate the amount of such damages it is not necessary that any witness should have expressed an opinion as to the amount of such damages, but the jury may themselves make such estimate from the facts and circumstances in evidence, *and by considering the business affairs of life.*" In the other (instruction No. 20) the court instructed the jury that if they found for the plaintiff they would be required to determine the amount of her damages, and that in determining said amount "the jury have a right to, and they should, take into consideration all of the facts and circumstances as proved by the evidence before them, the nature and extent of plaintiff's physical injuries, if any, so far as the same are shown by the evidence to be the direct result of the injury, if the evidence so shows; her suffering in body and mind, if any, as the jury may believe from the evidence before them in this case, she has sustained or will sustain by reason of such injuries; her loss of time and inability to work, if any, on account of such injuries; *all monies she has necessarily expended or become liable for in doctors' bills, if any, while being treated for such injuries;* and may find for her such sums as in the judgment of the jury, under the preponderance of the evidence and instructions of the court in this case, will be a fair compensation for the injuries she has sustained or will sustain, if any, so far as such damages and injuries, if any, are claimed and alleged in the declaration."

In Keokuk & H. Bridge Co. v. Wetzel, 228 Ill. 253, the first of these instructions was given, and it was there objected that damages were "charged in the dec-

laration" such as medical attendance, loss of time, etc., to which the rule announced in said instruction was inapplicable. In reply to this contention the court said: "This instruction was given and approved in North Chicago St. R. Co. v. Fitzgibbons, 180 Ill. 466, and *while the instruction given should have been limited so as to apply only to the physical injury which was sustained by the appellee,* we do not think, in view of the severe character of appellee's injury and the amount of the verdict, that the jury were misled by this instruction, and are of the opinion that the giving thereof did not constitute reversible error." The verdict thus referred to was for $1,575 for a serious injury.

In the case of North Chicago St. R. Co. v. Fitzgibbons, *supra,* referred to in the above quotation, the court said (p. 470): "Where there are elements of damage such as expenditures capable of pecuniary measurement, the law requires that the amount shall be proved."

In Harley v. Aurora, E. & C. R. Co., 149 Ill. App. 339, an instruction combining the two given in this case was under consideration by the Appellate Court of the Second District, and that court reversed the case for that reason alone, upon the authority of the statement in the Fitzgibbons case, *supra,* quoted above.

In Moore v. Aurora, E. & C. R. Co., 150 Ill. App. 484, a similar instruction again came before the same court, and was held to be error under the authority of the Fitzgibbons case, *supra,* and the Wetzel case, *supra;* but as the amount of the doctors' bills was, in fact, proved in that case, and definitely shown by the record, it was held that the error could be cured by a remittitur, and the judgment of the lower court was thereupon affirmed upon the filing by appellee of such a remittitur.

In Smith v. Chicago City Ry. Co., 165 Ill. App. 190, heard on appeal in the Branch Appellate Court of this

district, an instruction similar to instruction No. 19, as given in this case, was held to be reversible error, the court saying: "If the instruction had been limited to damages for physical pain and suffering, the rule announced would have been correct, but the declaration also claimed damages as the result of the inability of appellee, by reason of her injuries, to pursue certain business in which she had been engaged, and for obligations incurred for medical services. The instruction was inaccurate and should have been refused, as asked. Keokuk & H. Bridge Co. v. Wetzel, 228 Ill. 253. The evidence relating to the extent of injuries appellee claims to have sustained, by reason of the accident, is so close and conflicting, it cannot be said, as it was in the Wetzel case, that the giving of the instruction was harmless error."

From the facts shown in this case, we are forced to the same conclusion that was reached in the case last cited. We have no means of knowing, and we may not conjecture, how much, if anything, the jury allowed the plaintiff for doctors' bills paid or incurred, or for loss of time. It is not the law, as is stated in these instructions, that as to such elements of damage, in the absence of any competent proof of the value thereof, the jury may take into consideration "all the facts and circumstances in evidence" and find therefrom the amount of such doctors' bills and the amount lost in wages by loss of time; nor is it the law that as to such items, it is unnecessary for any witness to testify to the amount thereof, or that the jury may themselves estimate the amount from "the facts and circumstances in evidence and by considering the business affairs of life." For aught that appears to the contrary, a large part, or even the whole, of the amount allowed to appellee as damages may have been allowed by the jury under these instructions, for doctors' bills and loss of time. Under the authorities cited above and under the facts of this case, the giving of these instructions was therefore reversible error.

It is urged by appellant's counsel that in no event could a recovery be permitted upon the facts shown, and that we ought, therefore, to reverse the judgment without remanding. In support of this contention, several cases in other jurisdictions have been cited, which seem to hold, as a matter of law, that no recovery can be had for injuries sustained in an accident of this kind occurring at a street crossing or other stopping place, if it appears that at the time the car started, the conductor was in a position where he could not see the passenger getting off—as, for example, if he was inside the car collecting fares,—or if it appears that the passenger got both feet on the ground safely, and was in the act of moving away when the car started. Such is not, however, the law in this state. In West Chicago St. R. Co. v. Manning, 170 Ill. 417, the court said (p. 424): "If a car is brought to a stop at or near such crossings, it is not unreasonable to charge the conductor and gripman in control of the car * * * with the duty of exercising a reasonable degree of care, before putting the car again in motion, to see that passengers seeking ingress into or egress from the car are not in such positions as to be endangered by putting the car again in motion." To the same effect are North Chicago St. R. Co. v. Cook, 145 Ill. 551; Chicago City Ry. Co. v. Crauf, 136 Ill. App. 66, affirmed in 235 Ill. 262; Bloomington & N. Ry. v. Zimmerman, 101 Ill. App. 184; Jurkiewicz v. Illinois Cent. R. Co., 145 Ill. App. 44. In the case last cited, it is said (p. 50): "A carrier of passengers may not relieve itself from liability in cases like this, by proving that its trainmen did not know passengers were alighting." Nor will it be relieved merely by proof that the passenger in attempting to alight, succeeded in getting both feet on the ground before the car started, if at that time he was not wholly free from the car. In Chicago Union Traction Co. v. Rosenthal, 217 Ill. 458, a carrier was held liable for negligently start-

ing a car at the moment that a passenger, in attempting to alight therefrom, had one foot on the ground and the other on the step of the car. In Chicago Union Traction Co. v. May, 221 Ill. 530, the same result followed where a passenger attempted to board a car, and the car was negligently started while he had one hand and one foot on the car. In North Chicago St. R. Co. v. Cook, *supra*, the same conclusion was reached where the passenger only had one hand on the rail of the car. It is obvious that a different result could hardly be reached, as a matter of law, in this case where it was shown without contradiction that though appellee had both feet on the ground, yet she was practically tied by her clothing to the rear platform in such a way that any movement of the car was dangerous.

For the errors indicated, the judgment of the superior court is reversed and the cause remanded.

*Reversed and remanded.*