ROBERT KYD ET AL. V. HARRISON F. COOK.

FILED SEPTEMBER 23, 1898.    No. 8290.

1. **Wrongful Attachment: PLEADING AND PROOF: LOSS OF CREDIT.**
   Suit for wrongful attachment of a merchant's goods. The aver-
   ments of the petition *held* sufficiently specific to permit plaintiff
   to introduce evidence of loss of credit sustained by him in con-
   sequence of such attachment.

2. ——: ——: ——. A petition in such case is not demurrable

for omitting to give the names of persons who refused the plaintiff credit because of the attachment of his property.

3. ——: DAMAGES: EVIDENCE. For wrongful injury or destruction of one's financial credit he may recover whatever pecuniary damages he can prove, by competent testimony under proper pleadings, he has sustained thereby.

4. ——: ——: LOSS OF PROFITS: EVIDENCE. A sheriff wrongfully attached a merchant's goods, removing the greater part thereof from his store and retaining them for three months. In a suit by the merchant against the sheriff for damages, evidence of the sales and profits made by the merchant in his business, during the three corresponding months of the previous year under substantially the same conditions is competent, as it affords a reasonably certain basis for determining the profits lost by the merchant in consequence of the interruption of his business.

5. ——: ——: ——. One's measure of damages for wrongful attachment of his property is, under proper pleadings, all the damages he has sustained thereby. Gains prevented are losses, and these are damages.

6. ——: ——: ——. A loss of profits is a loss which may be reasonably, naturally, and ordinarily expected to follow from the closing up of a merchant's place of business and the seizure of his goods.

7. Instructions upon Issues: REQUESTS: DAMAGES. A court is bound to instruct the jury, whether requested or not, upon the material issues of the case; but it is not obliged, without request, to formulate a method of computation for the jury to pursue in estimating a plaintiff's damages.

8. Sales: DECLARATIONS OF SELLER: TITLE: FRAUD. Generally the declarations of a vendor, made after the conveyance, which tends to disparage the title of the vendee, are not admissible in evidence; but an exception arises to this rule in cases where the conveyance is assailed as fraudulent.

9. ——: ——: ——: ——. In those cases such declarations of the vendor, if in possession of the property, are admissible as *res gestœ*. If not in possession, the declarations are admissible as tending to establish the intent with which he made the conveyance, but not for the purpose of disparaging the vendee's title.

10. ——: ——: ——. Such declarations made by a vendor's vendor, not in possession of the property, nor in the presence of the vendee, are hearsay and incompetent.

ERROR from the district court of Gage county. Tried below before BUSH, J. *Affirmed.*

*W. C. LeHane* and *George A. Murphy,* for plaintiffs in error.

*Griggs, Rinaker & Bibb* and *A. Hazlett, contra.*

RAGAN, C.

In 1893 George R. and Walter W. Scott, as co-partners, were engaged in the furniture and undertaking business in the city of Beatrice. Some time in June of said year, George R. Scott sold his interest in said business to his partner. In July of said year Walter W. Scott sold said furniture and undertaking business to Harrison F. Cook. In October, 1893, Kountze Brothers brought a suit against Scott Brothers on a promissory note, and caused an attachment to be issued, under and by virtue of which the sheriff seized most of the stock of furniture in the possession of Cook, closed up his place of business, and kept it closed for ten days, removed the goods attached from the store, and retained possession of them until about January 12, 1894, at which time he returned them to Cook. The goods actually removed from the store were then of about the value of $6,000. Kountze caused these goods to be attached as the property of Scott Bros., on the ground that the sale from Walter Scott to Cook was made for the purpose of fraudulently hindering and delaying the former's creditors. The district court dissolved the attachment, and its judgment was affirmed by this court. (*Kountze v. Scott,* 52 Neb. 460.) Cook brought the suit at bar in the district court of Gage county, against the sheriff thereof and the sureties on his official bond, to recover the damages which he alleged he had sustained by reason of the closing up of his place of business, the depreciation in value of the goods removed from the store while in the sheriff's hands, and for the loss of profits which he had sustained by reason of the interruption of his business. Cook had a verdict and judgment and the sheriff and his sureties have brought the same here for review on error.

1. The first argument is that the court erred in permitting Cook to testify on the trial that he had been injured in his credit, and had been refused credit by certain wholesale houses by reason of the attachment of his goods. The argument is that the allegations of the petition were not such as to justify the admission of such evidence. The petition, among other things, alleged: "And that plaintiff enjoyed among the wholesale houses, business men, and manufacturers throughout the country a high and first-class credit, and was thereby enabled to do and was doing a large, prosperous, and profitable business. * * * And plaintiff further alleges that the said defendant, Robert Kyd, as such sheriff, and under said writ of attachment, then and there levied upon and took into his posession, carried away from plaintiff's said place of business, and converted to his own use, all of the said furniture, goods, wares, and merchandise set forth and mentioned in Exhibit B, the same being of the value of $6,000, and then and there forcibly and wrongfully closed up the plaintiff's store and locked the same, and kept the same closed up and locked and remained in possession thereof for the period of ten days, and thereby broke up, damaged, injured, and destroyed plaintiff's business and plaintiff's credit, by reason whereof the plaintiff has been damaged in the sum of $——. * * *" In support of their contention counsel for plaintiffs in error have cited us, among other cases, to the following: *Geisler v. Brown*, 6 Neb. 254; *Cook v. Cook*, 100 Mass. 194; *Bassell v. Elmore*, 48 N. Y. 561; *Tobias v. Harland*, 4 Wend. [N. Y.] 537; *Sticbeling v. Lockhaus*, 21 Hun [N. Y.] 457. Without reviewing these authorities, however, or any of them, we do not think they are in point. It is said by counsel that loss of credit is a special damage, which must be specially pleaded in order to be proved. This may be safely conceded, but we think it is here sufficiently specifically pleaded. Again, it is insisted that the petition should allege how and by what means the plaintiff was injured in his loss of credit. We

think he has sufficiently done that.   He specifically al-
leges that his credit was injured and destroyed because
of the fact that the sheriff attached and removed his
furniture and locked up and closed his place of business.

It seems also to be the contention of counsel that in
order to make the petition, in the respect under consid-
eration, good, it should have set out the names of the
persons who refused the plaintiff credit.   We do not
think the petition was demurrable because of that
omission.   If the defendants desired a more specific and
detailed statement as to what credits the plaintiff en-
joyed before the attachment suit, and of what credits
the attachment and seizure of his property had deprived
him, they should have made application to the district
court for a rule upon the plaintiff to make his petition
more specific in that respect.   (*Haverly v. Elliott*, 39 Neb.
201.)   We think the petition in the respect under consid-
eration states the ultimate facts in ordinary and con-
cise language as required by section 92 of the Code of
Civil Procedure.   *Lawrence v. Hagerman*, 56 Ill. 68, was a
suit similar to the one at bar.   The declaration in the
case alleged that by the attachment of his property
plaintiff's business had been broken up, and his credit
and reputation impaired and destroyed, and it was held
that these averments were broad enough to admit evi-
dence of all damage sustained by plaintiff in consequence
of the wrongful attachment, including his loss of char-
acter, credit, and business.

2. Another argument is that loss of credit was not
a proper element of Cook's damages; that this element
was too remote and speculative for consideration.   This
is simply saying that the wrongful destruction or injury
of a merchant's credit is one for which the law affords
no redress.   We cannot subscribe to this doctrine.   A
man's financial standing or credit may not be "property,"
within the technical meaning of that term, but it is
something often more valuable; and, if it be wrongfully
injured or destroyed by another, he may recover what-

ever pecuniary damages he can prove, by competent testimony under proper pleadings, he has sustained thereby. (*Meyer v. Fagan*, 34 Neb. 185; *Lewis v. Taylor*, 24 S. W. Rep. [Tex.] 92; *Hangen v. Hachemeister*, 21 N. E. Rep. [N. Y.] 1046; *Haverly v. Elliott*, 39 Neb. 201.)

3. It is next insisted that the court erred in permitting Cook to introduce evidence in reference to profits lost by him by reason of the attachment of his goods, and the closing up of his place of business. It is contended under this heading that the court permitted Cook to introduce testimony to show loss of profits sustained by him in conducting the business after the goods were returned to him. We do not so understand the record. It is as follows:

Q. What effect did it—that is the closing up of the store, attaching and removing the goods—have on your business after the time the goods were returned?

A. Well, we done some business by marking those goods down about thirty-five per cent. We were able to sell some of them, but the best part of the year had gone for trade.

Q. Well, were you able to sell those goods after you got them back; and if so, by what means, and at what prices?

A. Why, I was able to sell some by selling them at considerable less than the cost of them.

Q. Now, during the ten days the sheriff was in possession, and your store was closed, what effect did that have on your business?

A. Why, it completely stopped our business.

Q. Well, now you may state what the effect of shutting up this store for ten days, and then taking all those goods out for two or three months, was upon Mr. Cook's business down there.

A. It broke it up. People did not know he was in business afterwards for months.

It will thus be seen that this evidence was directed to the inquiry as to what effect the locking up of the store

for ten days, and the removing of the goods for three months, had upon Cook's business. And, though the question was propounded as to what effect that transaction had on the business after the time the goods were returned, the witness evidently understood the question to refer to what effect the locking up of the store and removing of the goods had upon the business, and as to how that business was affected by the return of the goods, because he answered that, as the best part of the year for trade had gone, they were still able to sell some of the goods returned by marking them down. We do not think the object or effect of this evidence was to show profits lost by Cook in conducting his business after the return to him of the attached goods.

Another contention under this heading is that the district court erred in admitting in evidence the proofs offered by Cook to show the loss of profit sustained by him in consequence of the attachment and removal of his goods, and the locking up of his store. The store was absolutely closed from the 23d of October for ten days. The attached goods, comprising nearly all of his stock, were held by the sheriff from the time they were attached for some three months. The court permitted Cook to show the amount of sales and the profits made by him in this business during the corresponding period of the previous year—that is, from October in one year until January in the next—as a basis for estimating his loss of profits; that by reason of the attachment of his goods and the knowledge thereof that had been bruited abroad, he was unable to purchase goods on credit from persons with whom he had been previously dealing in order to carry on the business. We think this testimony was all competent. It furnished a reasonably safe basis for determining whether Cook had been deprived of profits by this attachment proceeding and the amount of such profits. The measure of Cook's damages was all the loss he had sustained as the result of this wrongful attachment. If the goods, when returned, were worth

less than when they were seized, the amount of that depreciation was one element of damages. If Cook's reputation and credit as a merchant were injured by this wrongful attachment, this injury was another element of his damages. If, by reason of the locking up of his store and the attachment of his goods, Cook's business was interrupted, and he was thereby deprived of profits which he would have made had the business not been interrupted, this loss of profits was another element of his damages; and, if the plaintiffs in error cannot be made to respond to Cook for all the damages which he sustained as the result of this wrongful attachment, it is not because of the fact that under the law Cook is not entitled to these damages, but because of the inability of the courts to formulate any reasonably certain rule for their admeasurement. (*Schile v. Brokhalus*, 80 N. Y. 614; *Goebel v. Hough*, 2 N. W. Rep. [Minn.] 846; *Shepard v. Milwaukee Gas Light Co.*, 15 Wis. 349; *Schars v. Barnd*, 27 Neb. 94; *Haverly v. Elliott*, 39 Neb. 201; *Western Union Telegraph Co. v. Wilhelm*, 48 Neb. 910.)

Counsel for plaintiffs in error criticise somewhat the doctrine of this court making loss of profits in cases like the one at bar an element of damages. We think, however, the doctrine is a just and a reasonable one, and one enforced by the courts generally. We think that a loss of profits is a result which may be reasonably, naturally, and ordinarily expected to follow from the closing up of a merchant's place of business, and the seizure of his goods; and where an officer holding a writ of attachment directed against A and his property closes up the place of business and seizes the goods in the possession of, and claimed to be owned by, B, when called upon to make good B's damages he ought not to complain because the court includes in such damages the loss of profits sustained by B because of the seizure of his goods and the interruption of his business.

4. Another argument is as follows: "The court erred in failing to instruct the jury specifically and definitely

as to the manner in which they should estimate the damages as to the loss of business credits, profits, etc." The court instructed the jury: "The court instructs the jury, in case they find for the plaintiff, that in determining the amount of damages which the plaintiff is entitled to recover they are to consider not only the amount, if any, which the evidence in this case shows the goods in question were damaged while in possession of the sheriff, but also the actual loss, if any, which the evidence in the case shows the plaintiff sustained by reason of the suspension of business during the time he was prevented from carrying it on, by reason of the acts of the sheriff, if the jury believe from the evidence in the case that plaintiff was prevented from carrying on his business by the acts of the sheriff." The complaint is that the court nowhere in its instructions to the jury specifically told them what method they should pursue in estimating or arriving at or determining the damages which the plaintiff had sustained. But we think that the instruction quoted was specific and definite enough. It limited Cook's right to damages to the depreciation in value of the property seized, and the loss he had sustained by reason of the locking up of his store and the interruption of his business; and the jury, if it awarded Cook any damages by reason of the suspension of his business, were bound to base such an award upon the evidence. What manner or method the jury should pursue in estimating the amount of Cook's damages by reason of the suspension of his business was by the court left to the jury to determine. If this was unsatisfactory to the defendants below, they should have prepared and submitted to the court, with a request that it be given, an instruction prescribing the method which the jury should pursue in estimating the amount of the damages sustained by Cook by reason of the interruption of his business. (*Gran v. Houston*, 45 Neb. 813.) The court was bound to instruct the jury, whether requested or not, upon the material issues of the case. This it did, and correctly instructed the jury

as to the plaintiff's measure of damages. But the court was not obliged—if it was authorized to formulate—to prescribe a method of computation which the jury should pursue in estimating the plaintiff's damages.

5. As already stated, George R. Scott and Walter W. Scott, as co-partners, at one time owned the stock of furniture in controversy. George R. Scott sold his interest in the business to Walter W. Scott, and subsequently Walter W. Scott sold the entire business to Cook, the plaintiff below. One of the defenses interposed to this action by plaintiffs in error was that the sale from George R. Scott to Walter was made with a fraudulent purpose on the part of both of them to defraud their creditors; that the sale from Walter Scott to Cook was made with a fraudulent purpose on the part of both of those parties to defraud the creditors of Scott Bros. On the trial certain declarations and admissions made by Walter Scott subsequent to the sale of the property to Cook, to the effect that the sale from him to Cook was fraudulent, were admitted in evidence by the court; and the plaintiffs in error also sought on the trial to introduce in evidence certain declarations made by George R. Scott subsequent to the sale from himself to Walter, to the effect that that transaction was fraudulent. These declarations the court excluded, and this is the next ruling complained of. The district court was correct. Walter Scott was the vendor of Cook, and his declarations in disparagement of the title to the property, had he been in the actual possession thereof, were admissible as part of the *res gestæ;* and, though he was not in possession of the property, his declarations as to the intent with which the conveyance to Cook was made were admissible for the purpose of showing the intent with which he made the conveyance, although not for the purpose of establishing Cook's intent in accepting the conveyance, or for the purpose of disparaging Cook's title to the property. (*McDonald v. Bowman,* 40 Neb. 269.) But George R. Scott was the vendor of Cook's vendor. He was not in possession of the furniture when it was attached. He was not

Cook's vendor, and therefore his declarations were mere hearsay, and inadmissible. The general rule is that the declarations of a vendor, made after the conveyance which tend to disparage the title of the vendee, are not admissible in evidence. But the courts have formulated an exception to this rule in cases where the conveyance is assailed as fraudulent. In such cases the declaration of the vendor made after the conveyance and while in the actual possession of the property concerning the objects, intents, and purposes of the conveyance, have been held admissible as *res gestæ*. In *McDonald v. Bowman, supra,* and in *Sloan v. Coburn,* 26 Neb. 607, it was held that the declarations of a vendor made after the conveyance, as to the objects, purpose, and intent of the conveyance, in a suit in which the deed was assailed as fraudulent, were admissible in evidence, though such vendor at the time the admissions were made was not in possession of the property. But the declarations were held admissible in evidence on the ground that they tended to show the intent with which he made the conveyance, although they were not competent evidence as tending to show the intent of the vendee in accepting the conveyance. The answer of the defendants below does not allege that Cook had any knowledge of, or participated in, the alleged fraudulent conveyance from George R. Scott to Walter W. Scott; and as George R. Scott was not Cook's vendor, and was not in possession of the goods when attached, his declarations or admissions in reference to the object and purpose of the conveyance made by him to Walter or by Walter to Cook were incompetent, immaterial, and hearsay.

6. It is also insisted that the verdict is not sustained by the evidence, and that the damages awarded by the jury are excessive, appearing to be the result of passion and prejudice. We do not think that either of these contentions is tenable. The record contains no prejudicial error. The judgment of the district court must be and is

AFFIRMED.