WRAY, RESPONDENT, *v.* GREAT FALLS PAPER CO., APPEL-
LANT.

(No. 5,607.)

(Submitted February 16, 1925.   Decided March 9, 1925.)

[234 Pac. 486.]

*Conversion—Exemplary Damages—Malice—Husband and Wife
—Separate Property of Wife—Constructive Notice in Attach-
ing Creditor—Complaint—Sufficiency—Surplusage—Trial —
Instructions—Law of Case.*

Conversion—Exemplary Damages—Malice—Instructions.
    1. In an action in conversion in which exemplary damages were
asked, an instruction defining the terms "actual" and "presumed"
malice *held* not open to the objection that it authorized an award
of punitive damages for malice in law as well as malice in fact.
Same—Malice—How Established.
    2. Malice may be established either by direct or circumstantial
evidence, and when once established, the result is the existence of
malice, not malice in law nor malice in fact.
Trial—Instructions—Abstract Rules of Law Improper.
    3. An instruction stating mere abstract rules of law without ap-
plying them to the facts of the particular case should not be
given.
Conversion—Husband and Wife—When Attaching Creditor Chargeable
With Constructive Notice of Wife's Claim to Property Attached—
Exemplary Damages.
    4. Evidence in an action for the conversion of restaurant fixtures
claimed by the wife of a judgment debtor as her separate prop-
erty and seized by the attaching creditor with constructive notice
of plaintiff's claim by reason of an inventory filed by her under
section 5749, Revised Codes, over plaintiff's protests and objections,
thus destroying a prosperous business in an effort to coerce her to
pay her husband's debt, *held* sufficient to warrant an award of
exemplary damages.
Same—What Constitutes.
    5. Any distinct act of dominion wrongfully exerted over one's
property in denial of his right or inconsistent with it is a con-
version.
Same—Complaint—Sufficiency—Surplusage.
    6. Complaint in an action for conversion alleging that plaintiff
on a given day was the owner and entitled to the possession of

---

    3. Abstract propositions of law stated without applying same to
case as reversible error, see note in **Ann. Cas.** 1915D, 1128.
    4. Exemplary damages, when recoverable, see notes in 27 **Am. Dec.**
684; 50 **Am. Dec.** 767; 28 **Am. St. Rep.** 870; 101 **Am. St. Rep.** 730.

the chattels in question, describing and giving their value; that on that day the defendant wrongfully took and carried them away, refused to restore them after demand and wrongfully deprived plaintiff of their possession and use, to her damage, *etc.,* was sufficient to state a cause of action, the unnecessary subsequent allegation of ownership and possession in plaintiff at the time of verification of the complaint not destroying the cause of action already stated.

Trial—Instruction Given Without Objection—Law of Case.

7. An instruction given without objection becomes the law of the case, whether technically correct or not.

Same—Conflicting Instructions Reversible Error.

8. The giving of conflicting instructions constitutes reversible error, hence refusal of an instruction directly contradictory of statements contained in one given was proper.

Conversion — Possession of Property — Presumption of Ownership—Proper Refusal of Instruction.

9. The presumption declared by subdivision 11, section 10606, Revised Codes, to the effect that "things which a person possesses are owned by him" has reference to the present and not to the past; therefore an offered instruction in an action in conversion that if plaintiff's husband was in possession of the property in question prior to the time it was attached, the law presumes that he and not plaintiff was its owner, was properly refused.

*Appeal from District Court, Toole County; John J. Greene, Judge.*

ACTION by Hetty Wray against the Great Falls Paper Company. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. Louis P. Donovan,* for Appellant, submitted a brief and argued the cause orally.

Admitting for the purpose of argument that the evidence shows that defendant was guilty of trespass or a conversion of property, the writer submits that there is not a scintilla of evidence to indicate that it was not proceeding in good faith in an honest effort to legally collect the indebtedness owing to it from Lucien Wray. Mere proof of a trespass or conversion will not justify the assessment of exemplary damages. (17 C. J. 983, 985; 8 R. C. L. 585, 586; *Luther* v. *Lee,* 62 Mont. 174, 204 Pac. 365.)

---

7. Instruction not objected to as the law of the case on appeal; see note in **Ann. Cas.** 1913D, 300.

Under instruction 4 the jury is clearly instructed that punitive damages may be assessed although there existed in the mind of the defendant no ''actual malice''—no guilty intent to vex, annoy or harass. This is contrary to the settled law of this state. (See *Luther* v. *Lee, supra; Walker* v. *Chanslor,* 153 Cal. 118, 126 Am. St. Rep. 61, 17 L. R. A. (n. s.) 455, 94 Pac. 606, at 608; *Davis* v. *Hearst,* 160 Cal. 143, 116 Pac. 530; 8 Cal. Jur. 864.)

The complaint charges a trespass, but not a conversion. A conversion necessarily implies that plaintiff's property interest has been destroyed. For that reason the plaintiff is allowed to recover the full value of the property in an action of conversion. Of course, she cannot recover the value of the property and recover the property also. The action is based upon the theory that plaintiff's property is destroyed and in lieu thereof plaintiff has a claim for its value. The tort-feasor acquires the title to the property. (*May* v. *Georger,* 21 Misc. Rep. 622, 47 N. Y. Supp. 1057.) In this case the plaintiff denies that her property has been destroyed or her ownership thereof affected. She asserts ownership and right of possession. The verdict finding all of the issues in her favor necessarily finds that she is still the owner and still entitled to the possession of the property. The judgment also necessarily implies that she is still the owner of the property alleged to have been converted and entitled to the possession thereof. It follows that when the plaintiff has collected this judgment from the defendant, she can then recover the property, because the decision of the court and jury is that she is still the owner and entitled to the possession of the property. The law does not contemplate a double recovery of this character.

The rule is settled in Montana, at least in cases of replevin, that where the plaintiff merely pleads ownership and right of possession in general language, the defendant may, under his general denial, prove that the plaintiff's title is based on fraud. (*Gallick* v. *Bordeaux,* 22 Mont. 470, 56 Pac. 961; *Kaufman* v.

*Cooper,* 38 Mont. 6, 98 Pac. 504, 1135.) The reason for the rule applies with equal force to actions for conversion, in which the complaint contains only general allegations of title and right of possession. The same rule of pleading should therefore apply to acts for conversion. It is so held in other jurisdictions. (*Kerwood* v. *Ayres,* 59 Kan. 343, 53 Pac. 134; *Campbell* v. *Meyer Bros. Drug Co.,* 7 Kan. App. 501, 54 Pac. 287.)

*Messrs. Dillavou & Moore,* for Respondent, submitted a brief; *Mr. R. C. Dillavou* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On or about June 29, 1923, the sheriff of Toole county, acting at the behest of the Great Falls Paper Company, took possession of personal property comprising the equipment of a restaurant in the town of Shelby. The property was seized under a writ of attachment issued in an action wherein the paper company was plaintiff and Lucien Wray and M. Higgins, partners doing business as the Exchange Furniture Company, were defendants, and later the property was sold to satisfy a judgment recovered in that case. Hetty Wray, the wife of Lucien Wray, instituted this action to recover damages for the alleged wrongful seizure of the property. Issues were joined and the cause tried, resulting in a verdict in favor of the plaintiff for compensatory and exemplary damages, and from the judgment entered on the verdict defendant appealed.

1. The principal objection is made to the award of exemplary damages, and it is insisted that the court erred **[1, 2]** in giving the instructions (3 and 4) submitting the question to the jury.

Instruction 3 follows substantially the language of section 8666, Revised Codes, which reads: "In any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may

give damages for the sake of example, and by way of punishing the defendant.''

By instruction 4 the court undertook to explain the meaning of ''actual'' and ''presumed'' as employed in section 8666. It assumed that ''actual malice'' is ''malice in fact,'' and that ''malice presumed'' is ''malice in law,'' and then attempted a definition of each of these phrases. Exception was not taken to the definitions, the only objections to either instruction being that it authorizes an award of exemplary damages for malice in law as well as malice in fact, and that the evidence does not warrant a recovery of exemplary damages.

In support of the contention that malice in law does not justify an award of exemplary damages, counsel for defendant cites *Walker* v. *Chanslor*, 153 Cal. 118, 126 Am. St. Rep. 61, 17 L. R. A. (n. s.) 455, 94 Pac. 606, an action for damages for assault and battery, in which the court used this language: ''Damages of an exemplary character could only be assessed against the defendants upon a showing of malice in fact as distinguished from malice in law.'' Whether this court should be influenced by that statement must depend upon an understanding of the theory upon which the California court proceeded.

A reference to Words & Phrases discloses the all but numberless instances in which the courts have attempted to define ''malice'' and to differentiate between so-called classes of malice, and an examination of the decided cases discloses the hopeless confusion which has resulted from the attempts. One court treats ''implied malice'' as ''malice in fact,'' another as ''malice in law.'' But, speaking in very general terms, it may be said that most of the authorities refer to ''actual malice'' and ''express malice'' as terms which denote malice in fact, and ''constructive malice,'' ''implied malice,'' ''imputed malice,'' and ''presumed malice'' as terms synonymous with ''malice in law.'' These so-called definitions, however, are all more properly characterized descriptions which deal primarily with the method of establishing the existence of malice, and even for that purpose they are of little value.

72 Mont.—30

Malice, like envy, love or hate, is a concept of the mind, a term understood generally but one which practically defies definition. Our Codes do not, in terms at least, recognize any different kinds, grades or degrees of malice; but they do recognize malice itself, and declare that the term imports "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act," and that the existence of malice may be "established either by proof or presumption of law." (Sec. 10713, Rev. Codes.) In other words, this statute deals with the characteristics of malice and the different means by which the existence of malice may be established; but, when once established, the result is the existence of, not malice in law, nor malice in fact, but of just malice.

Generally, the existence of malice must be established by evidence, direct or circumstantial, but there are exceptions to the rule; for example, in the law of criminal libel "an injurious publication is presumed to have been malicious if no justifiable motive for making it is shown." (Sec. 10991, Rev. Codes.) And again, "a malicious and guilty intent" is presumed "from the deliberate commission of an unlawful act, for the purpose of injuring another," and this presumption is made conclusive. (Sec. 10605.)

At common law, malice was presumed from the fact that a publication was false, and, in turn, the falsity of the publication was presumed from the mere fact of publication. (*Cooper* v. *Romney,* 49 Mont. 119, Ann. Cas. 1916A, 596, 141 Pac. 289.) This was said to be a mere fiction of the law, and the fact that it was but a fiction may be illustrated by the case of *Taylor* v. *Hearst,* 107 Cal. 262, 40 Pac. 392. In that case a libelous article was published concerning J. W. Taylor. The intention of the reporter, publisher and proprietor of the paper was to charge the offense to J. N. Taylor, but by mere inadvertence the wrong middle initial appeared in the article. It is apparent that a wish to vex, annoy or injure J. W. Taylor, or an intent to do a wrongful act, was altogether wanting; but nevertheless the existence of malice

was to be presumed under the common-law rule. If this fiction is characterized properly as "malice in law," then there may be justification for the classification made by the California court in *Walker* v. *Chanslor*, and that that court employed the phrase in the sense just indicated is made certain from the decision in *Davis* v. *Hearst*, 160 Cal. 143, 116 Pac. 530.

When we understand the theory which underlies the decision in *Walker* v. *Chanslor*, the language quoted above is unobjectionable; but the case is not authority for the proposition to which it is cited here. The trial court did not employ the phrase, "malice in law" in the sense that the California court used it.

The worst that can be said of instruction 4 is that it states mere abstract rules without any attempt to apply them to the facts of the instant case; and while we do not approve of the [3] text of the instruction, and repeat the oft-stated condemnation of the practice of submitting abstract propositions of law, the instruction is not open to the objection urged against it. When read in connection with instruction 3, it does advise the jury that malice may be established either by direct or circumstantial evidence, and to this extent it is clearly correct. It does not conflict in the least with anything said by this court in *Moelleur* v. *Moelleur*, 55 Mont. 30, 173 Pac 419; in *Luther* v. *Lee*, 62 Mont. 174, 204 Pac. 365; in *Gilham* v. *Devereaux*, 67 Mont. 75, 33 A. L. R. 381, 214 Pac. 606; in *Long* v. *Davis*, 68 Mont. 85, 217 Pac. 667, or in *Klind* v. *Valley County Bank*, 69 Mont. 386, 222 Pac. 439.

Stated briefly, the evidence discloses in effect that the officer [4] and an agent of the paper company appeared at the restaurant on June 20, but, for reasons satisfactory to themselves, did not levy the writ at that time, though they had it in their possession. On the 28th the officer returned just before the noon hour and informed plaintiff that he intended to close the place. Lucien Wray was not present,

and plaintiff protested that the property belonged to her exclusively and asked the officer to examine the license, in her name, which was posted in a conspicuous place. This he refused to do, but excluded customers who were entering the place for the noon meal, and closed the restaurant, placing a keeper in charge. Plaintiff then went to the attorney for the paper company, made her claim of ownership and asked that the property be released, but this was refused. She then made a third-party claim under the provisions of section 9273, Revised Codes, and the paper company furnished an indemnity bond which required the sheriff to retain possession. Later the property was sold to satisfy the judgment recovered against Lucien Wray and Higgins.

Pursuant to the provisions of section 5793, Revised Codes, plaintiff had theretofore filed with the county clerk an inventory of her separate personal property, including all of the property seized. Section 5794 declares: "The filing of the inventory in the clerk's office is notice and *prima facie* evidence of the title of the wife." The paper company, its attorney, and the officer were therefore chargeable with notice that the property about to be seized was *prima facie* the separate property of the wife and not subject to seizure for the debt of the husband due to the paper company (sec. 5799), but notwithstanding they persisted, over the plaintiff's objections and protests, seized the property, closed the restaurant, and destroyed a prosperous, going business.

In *Jones* v. *Lamon,* 92 Ga. 529, 18 S. E. 423, it appeared that a daughter of the defendant in the attachment proceeding was stopped on a public street and the horse and phaeton then in her possession were seized by a constable acting under a writ of attachment and by direction of the attorney for the plaintiff in the attachment case. In an action by the daughter for damages for the wrongful seizure of her property to satisfy her father's debt, she was permitted to recover punitive damages. In disposing of the case the court said: "As the property in fact belonged, not to the defendant in attach-

ment, but to his daughter, if the attorney knew or had reasonable grounds for believing it did belong to her, he was chargeable with notice of the daughter's title, and notice to him would be notice to his client. ' On this ground the client would be liable in an action by the daughter for the actual damages sustained by· her in consequence of the levy, and might in the discretion of the jury be subject also to exemplary or punitive damages, if either in the act or the intention the tort was attended with circumstances of aggravation. If the attorney was ignorant of the daughter's title, and believed in good faith that the title was in the defendant in attachment, as his possession indicated, and if he caused the levy to be dismissed without any unreasonable delay upon being informed of her title, the client would be liable to the daughter for actual damages only.''

If the testimony of the plaintiff and her witnesses be accepted as true, the jury might fairly infer that the purpose of the defendant in having the property attached and the restaurant closed was to coerce the plaintiff to pay the debt of her husband, for which neither she nor her property was liable; and that the jury accepted the testimony as true is evidenced by the verdict.

2. It is contended that the complaint herein does not state a cause of action for conversion, and that, at most, it [5, 6] charges only a trespass. In the complaint plaintiff alleges that on the twenty-ninth day of June, 1923, she was the owner and entitled to the possession of the property in question, particularly describing it and giving its value; that on that day the defendant wrongfully took and carried it away, refused to restore it after demand, and wrongfully deprived plaintiff of its possession and use, to her damage, *etc.* The allegations necessary to lay a foundation for the recovery of exemplary damages were made also. That this pleading contains all the essential allegations of a complaint in conversion is apparent. (26 R. C. L. 1129; 38 Cyc. 2065.) In the early case of *Tuttle* v. *Hardenberg,* 15 Mont. 219, 38 Pac.

1070, this court quoted approvingly from Cooley on Torts, 448, the following: "Any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion," and the text has been approved repeatedly since that time. (*De Celles* v. *Casey,* 48 Mont. 568, 139 Pac. 586; *Ferrat* v. *Adamson,* 53 Mont, 172, 163 Pac. 112; *Interstate National Bank* v. *McCormick,* 67 Mont. 80, 214 Pac. 955.)

It is true that plaintiff made the unnecessary, additional allegation that she was the owner and in possession of the property at the time she verified the complaint (*Babcock* v. *Caldwell,* 22 Mont. 460, 56 Pac. 1081); but this allegation does not destroy the cause of action already stated.

3. Upon the cross-examination of plaintiff, the defendant sought to show that Lucien Wray was insolvent, but upon objection the evidence was excluded, and counsel for defendant then made the following offer of proof: "Defendant offers to prove by the witness on the stand, Mrs. Wray, that the Exchange Furniture Company, a copartnership of which L. Wray, the husband of plaintiff, was a member, was financially involved and insolvent, and that its liabilities exceeded its assets by approximately $4,000."

In justification of the court's ruling rejecting the offer, it is sufficient to say that it was not properly a part of the cross-examination and was not renewed when the evidence on behalf of the defendant was introduced. But aside from these considerations, the offer itself is so indefinite and uncertain that the court could not be put in error for rejecting it. It does not refer to any particular time, though it speaks in the past tense. The offer was made and defendant's instructions 1 and 2 tendered upon the theory that there was involved a transfer of property from an insolvent husband to his wife, which was void as against the defendant under the provisions of section 8603, Revised Codes. We doubt whether the evidence affords any justification for the theory, but we are not called upon to determine the matter.

The trial court adopted the theory that the question involved was the right of an insolvent husband to prefer his wife over other creditors, and by instruction 8 advised the jury at length upon that subject. Instruction 8 was given without objection, [7] and, whether technically correct or not, became the law of the case, acquiesced in by the defendant. By that instruction the jury was told that if Lucien Wray was actually indebted to his wife at the time he paid over to her the money he received from the sale of his interest in the Exchange Furniture Company, such preference was not void as to defendant even though the payment operated to hinder and delay it in the collection of its debt due from her husband. Either defendant's offered instruction 1 or 2, if given, would have contradicted directly the statement contained in that instruction. By instruction 8 the actual existence of a *bona fide* indebtedness, and not the intention of the parties, was made the factor which determined the validity of the transaction between Lucien Wray and his wife; whereas, offered instructions 1 and 2 each made the intention of the parties the determining consideration. It has been decided so often that a trial court commits reversible error by giving conflicting [8] instructions that a citation of some of the cases suffices to dispose of the contention that the court erred in refusing to give defendant's offered instructions, 1 and 2. (*Palmer* v. *McMaster*, 10 Mont. 390, 25 Pac. 1056; *Yoder* v. *Reynolds*, 28 Mont. 183, 72 Pac. 417; *Sullivan* v. *Metropolitan Life Ins. Co.*, 35 Mont. 1, 88 Pac. 401; *Wells* v. *Waddell*, 59 Mont. 436, 196 Pac. 1000.)

4. Finally, it is contended that the court erred in refusing to give defendant's offered instruction No. 3, as follows: [9] "The law presumes that things which a person possesses are owned by him. If, therefore, you find from the evidence that the plaintiff's husband, Lucien Wray, was in possession of the Pup Café prior to the levy of attachment thereon, then the law presumes that he, and not the plaintiff, was the owner of the property."

In the opening sentence this instruction states the presumption declared by subdivision 11, section 10606, Revised Codes, but in the attempt to apply the presumption, the instruction is erroneous. It refers to the possession of Lucien Wray at some time in the past—some indefinite time prior to the seizure—whereas, the statute speaks in the present tense.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway, Associate Justices Stark and Matthews and Honorable C. W. Pomeroy, District Judge, sitting in place of Mr. Justice Galen, absent on account of illness, concur.