# TRUZZOLINO FOOD PRODUCTS CO., Respondent, *v.* F. W. WOOLWORTH CO., Appellant.

(No. 7,772.)

(Submitted December 3, 1938. Resubmitted April 3, 1939. Decided June 1, 1939.)

[91 Pac. (2d) 415.]

410

*Mr. T. J. Davis,* for Appellant, submitted a brief, and argued the cause orally.

412

*Messrs. Walker & Walker* and *Mr. Harlow Pease,* for Respondent, submitted a brief; *Mr. Thomas J. Walker* and *Mr. Pease* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is on rehearing of an appeal by the F. W. Woolworth Company from a judgment for $5,750 in favor of the plaintiff, the original opinion in which action was rendered on December 31, 1938.

V. Truzzolino has lived in the city of Butte ever since the year 1895, and during that time has been engaged in the manufacture and sale of tamales. He was engaged in this business as an individual until the year 1935, although in 1933 Truzzolino made an assignment of his business for the benefit of his creditors. In July, 1935, a corporation was formed under the name of ''Truzzolino Food Products Corporation,'' and this corporation continued in the manufacture of tamales, with Truzzolino as a stockholder and employee of the corporation. In the manufacture and sale of tamales, Truzzolino used the trade-mark ''Truzzolino Genuine Chicken Tamales.'' In the year 1933, after the assignment, he added ''V. T. Brand'' to the trade-mark.

It is undisputed that V. Truzzolino, as an individual, operated exclusively under the above trade-mark, and any article bearing it was generally understood to be of his manufacture. The plaintiff here, and successor to V. Truzzolino, the individual, registered the trade-mark with the Secretary of State of October 26, 1935, and has continued to use it since that time.

On October 14, 1936, after a series of complaints to Truzzolino that his products were not of former quality, the plaintiff corporation filed suit against the F. W. Woolworth Company, alleging that defendant company had engaged in unfair trade practices, in that it had wilfully advertised and sold tamales which it represented to be ''Truzzolino'' tamales, but which were in fact not manufactured by the plaintiff company but by another and different concern, this being done by the defendant with knowledge at the time that the representations were false and made for the purpose of deceiving and defrauding the public.

The complaint also alleged that the tamales sold by the defendant were inferior to the plaintiff's product and that by reason of this action on the part of the defendant, the plaintiff's business had been injured to the extent of $10,000, which it sought to recover as actual damages. The complaint also claimed $10,000 as punitive or exemplary damages.

The cause was tried with a jury which returned a verdict in favor of plaintiff for $750 actual damages and $5,000 as punitive damages. The appeal is from the judgment, and defendant has specified twenty-one errors, but for the sake of avoiding repetition it has grouped these assignments for the purpose of argument.

It is contended that the complaint does not state a cause of ▮▮ action against the defendant company. We think the pleading is sufficient to state a cause of action for damages. It is based upon an injury caused by the defendant in advertising and selling a different and inferior tamale to the tamale manufactured by the plaintiff. It in effect alleges an appropriation of the good will which had been established by the plaintiff and its predecessor. This court has heretofore decided that this is an injury for which a person may seek redress in the courts. (Restatement of the Law of Torts, par. 711 et seq.)

In the case of *Esselstyn* v. *Holmes*, 42 Mont. 507, 516, 114 Pac. 118, 119, it was said: "It cannot be doubted that upon principles analogous to those which apply to technical trademarks a person may be protected in the exclusive use of his own name, or that of a place, building, or other designation selected by him, and by use of which, in connection with his business, he has acquired for it a valuable good will. The theory of the law is that, while all are entitled to the use of any given designation, no one has the right to so use it, even though it is his own name or a name selected for his place of business, as to invade the right of another. Such conduct is a distinct fraud. ▮▮ The good will of a business is intangible, being merely the expectation of continued public patronage (Rev. Codes, sec. 4566) ; but nevertheless it is property capable of transfer (Rev. Codes, sec. 4567), and the owner is entitled to the same protection in the exclusive enjoyment of it as he is in that of his tangible possessions. One competitor in the same business cannot so dress his goods or advertise them as to take away the trade reputation which another has established by a long course of honesty and fair dealing with the public. To permit this character of wrong would be tantamount to a declaration that for

416

injuries to this species of property the law furnishes no. redress. * * * 'No man has a right to sell his own goods as the goods of another.' " While this case was confined to injunctive relief, we can see no reason why legal relief in the form of damages cannot be had when the fraudulent acts of the defendant cause pecuniary loss because of injury to the plaintiff's standing, reputation or good will. (15 Am. Jur. 544; *Virtue* v. *Creamery Package Mfg. Co.*, 123 Minn. 17, 142 N. W. 930, 1136, L. R. A. 1915B, 1179, 1195; *Lawrence* v. *Hagerman,* 56 Ill. 68, 8 Am. Rep. 674; *Kyd* v. *Cook,* 56 Neb. 71, 76 N. W. 524, 71 Am. St. Rep. 661.)

The defendant contends that the court erred in compelling it ▮ to go to trial before a jury. It contends that the complaint was grounded upon a cause of action in equity, and that the court has exclusive jurisdiction to try the cause. We do not view the cause of action thusly. While it is true that the complaint asks for equitable relief, yet the specification of injury and the claim for damages are for legal relief, and it was not error to proceed upon the legal remedy and try the cause before the jury. The fact that no equitable relief was awarded in the judgment eliminates the question whether both equitable and legal relief may be granted under the same complaint. (See *Chessman* v. *Hale,* 31 Mont. 577, 79 Pac. 254, 3 Ann. Cas. 1038, 68 L. R. A. 410.)

The defendant further contends that the court erred in admitting testimony of acts occurring before the incorporation of the plaintiff. The record does not indicate whether there was an assignment to the creditors of the "good will" established by Truzzolino prior to the assignment. The rights of the creditors of Truzzolino are not here involved. This cause of action is based on injuries which were suffered by the plaintiff after the assignment for the benefit of creditors. If the corporation was entitled to use the trade-mark, of which there seems to be no dispute, it was not error for plaintiff to show the reputation which had been established by Truzzolino before the incorporation and which contributed to the value of any

tamale made by Truzzolino or the corporation under his management.

The most vigorous attack made on the judgment of the lower court is made on the evidence supporting the right to and the amount of damages, both actual and punitive.

The plaintiff's case rests on the testimony of a great number of witnesses. Many of them testified that each went to the Woolworth store and asked if the store sold Truzzolino tamales. Each of those witnesses unequivocally testified that the answer they received was that the defendant did sell Truzzolino tamales. The evidence is positive that the defendant company made only one purchase of Truzzolino tamales; that was in the year 1933, long prior to the dates of the representations. In addition to the many witnesses who made single purchases, there is other evidence, which is particularly strong and unusually convincing, that the acts of the defendant in selling the tamales as Truzzolino's were of a deliberate and wilful character.

. Mrs. Katie Oswald, who was very familiar with the qualities of the Truzzolino tamale (having worked for Truzzolino), on making purchases of tamales from the defendant company, remonstrated with the waitress that those served were not Truzzolino's. The waitress assured her that they were and pointed to a sign over the steam table. Later Mrs. Oswald met Mr. Diffenbacher, the store manager of the Butte Woolworth Store, and asked him about the kind of tamale sold by the store. According to the witness, denied however by Diffenbacher, he said that they were Truzzolino's tamales and that Truzzolino's son delivered them almost every day just before noon.

Another witness for the plaintiff testified that he went to the defendant's store and asked for six tamales, which were supplied to him. He asked if they were Truzzolino tamales, and the waitress told him they were. He then asked if they would so indicate on the sales slip, and this was done. At this point of the trial the plaintiff called a Mrs. Minton, an adverse witness who was the manager of the luncheonette department,

and she testified that she made the notation on the slip and that at the time she knew that she was making a false representation. She explained her actions by saying that witness knew the tamales were not Truzzolino's and that she did it for the reason that he had to have Truzzolino tamales and wanted her to so state for him, and that she wrote the words merely to help him out.

Another of plaintiff's witnesses was formerly employed at the defendant's lunch counter. She testified that she sold many tamales to customers, stating, when asked, that they were Truzzolino's, and that she at the time knew that they were in fact not made by Truzzolino. On cross-examination this witness connected her actions with Mrs. Minton in the following words: "Mrs. Minton directed me in my work. We got the idea to tell customers these were Truzzolino's tamales when we started to work there, and we asked whose tamales, and she said 'Truzzolino's.'"

Another factor which stands out to indicate the defendant's wilful misrepresentations is that in the year 1935 the defendant had a window display in its store in which it had dummy tamales bearing the brand "V. T." The plaintiff introduced photographs which plainly show "V. T." on the tamales so advertised. The defendant attempted to show that this display was made in 1934 and shortly after the purchase of the two dozen tamales which it was claimed was made in 1934, but, as shown by defendant's own books, these tamales were purchased in 1933. The testimony of the photographer, however, is that the pictures were taken in 1935, indicative of the fact that the window display occurred many months after the purchase of tamales from Truzzolino.

In a case of this character it is incumbent upon plaintiff to offer proof from which the jury can find that the acts of the defendant amounted to a wilful misrepresentation calculated to injure the plaintiff, or were activated by a desire to deceive the customers so that the defendant's business would be increased by such misrepresentation. (Restatement of the Law of Torts,

sec. 745.) These are questions of fact for the jury, and since the jury here found upon amply sufficient evidence that there was such wilful misrepresentation, we will not disturb their finding. (*Rumsey* v. *Spratt*, 79 Mont. 158, 255 Pac. 5; *Carey* v. *Guest*, 78 Mont. 415, 258 Pac. 236; *Doane* v. *Marquisee*, 63 Mont. 166, 206 Pac. 426.) The evidence produced by the plaintiff sustains the allegations of the complaint; it is not inherently improbable, impossible or incredible, and we will not disturb the judgment on that ground.

The defendant contends that there was no evidence upon which the jury's award of actual damages can be sustained. The plaintiff's witnesses claimed Truzzolino's product to be superior, and those of defendant claimed the one sold by defendant to have been of a better quality. While this evidence is of a conflicting nature as to the superior quality of the article sold, yet there is one fact which seems to be well established—by both plaintiff and defendant—i. e., that the two tamales were of different taste because of that of plaintiff being "hotter," or containing more spices. It is not unreasonable to suppose that those desiring tamales made by Truzzolino preferred the ones which contained more spices, or the "hotter" kind, and met with disappointment in the tamales served, and thereby the reputation of Truzzolino suffered a blow.

The testimony of John Truzzolino, who was the sales manager of the plaintiff corporation, shows that upon learning of the defendant's acts, the plaintiff began an advertising campaign in which the radio was used for the purpose of urging customers to insist upon the "V. T." brand as evidence that they were obtaining genuine Truzzolino tamales. In addition to this, free samples were distributed and John Truzzolino was compelled to spend one-half of his working time for a period of sixteen months solely in following up troubles and complications resulting from the infringement of the defendant. The total amount of actual expense in this connection was shown to have been $1,627.

The defendant, in attempting to disprove the actual damage, offered the plaintiff's books to show that during the pe-

riod mentioned the plaintiff's business actually increased. This does not negative the fact that damage was done to the plaintiff, for it might have been that plaintiff's volume of business and profits would have increased much more than they did had it not been for defendant's acts, or that the extra advertising expense, necessitated by such acts, was necessary to keep the business of the plaintiff up to the normal increase demonstrated by the plaintiff's books. It was within the province of the jury to examine this evidence, and while we do not know upon just what theory the jury predicated its award of actual damages, it is our opinion that the amount is amply sustained by the evidence, no matter upon what basis the award was made. (See Restatement of the Law of Torts, sec. 746.)

The next question involves the sufficiency of the allegations of, and the evidence to support the exemplary damages awarded. Section 8666, Revised Codes, provides: "In any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

The decisions of this court have made it clear that the complaint need not set out the punitive charges eo nomine, but must allege the acts of the defendant to have been characterized by fraud, oppression, malice or the like, and that punitive damages cannot be assessed except where actual damages have been awarded. (Luther v. Lee, 62 Mont. 174, 204 Pac. 365; Martin v. Corscadden, 34 Mont. 308, 86 Pac. 33; Gilham v. Devereaux, 67 Mont. 75, 214 Pac. 606, 33 A. L. R. 381.)

The complaint here satisfies the above prerequisites. The jury awarded actual damages and the evidence supports such award. It was warranted in finding that the acts of the defendant were wilful and in such gross violation of the plaintiff's rights as to amount to oppression and fraud, thus warranting the award of exemplary damages. If the acts were done wilfully and the result amounts to fraud or oppression, then section 8666, supra,

has been satisfied. (Compare *Wray* v. *Great Falls Paper Co.*, 72 Mont. 461, 234 Pac. 486.)

As to punitive damages, the decisions of this court have left the matter to the jury. It may make such award as is proper in its judgment under the circumstances. This court will not disturb the award unless its determination appears to have been influenced by passion, prejudice, or some improper motive, or unless the amount is outrageously disproportionate either to the wrong or the situation or circumstances of the parties. (*Cornner* v. *Hamilton*, 62 Mont. 239, 204 Pac. 489; *Johnson* v. *Horn*, 86 Mont. 314, 283 Pac. 427.)

The defendant claims that the award of exemplary damages is excessive, basing its contention upon the holding in *Hall* v. *Northern Pac. Ry. Co.*, 56 Mont. 537, 186 Pac. 340, and cases therein cited, and arguing that in the absence of miscalculation, the excessiveness is the basis of a presumption that the award was influenced by passion and prejudice. We have already held that the award of actual damages is amply supported by the evidence; as to it the jury awarded less than half of the maximum set by the judge in his instructions. As to the punitive damages, the ratio is about six to one, which, in the light of the decided cases, is not out of line.

In the case of *Johnson* v. *Horn*, supra, this court said: "The courts have not established a definite formula to be followed in ascertaining whether an award for exemplary damages is excessive. As a consequence many courts hold that because an award of punitive damages is ten times the amount of actual damages awarded, as here, does not of itself demonstrate that the award is excessive. (*Ford* v. *McAnally*, 182 N. C. 419, 109 S. E. 91; *Carleton* v. *Fletcher*, 109 Me. 576, 85 Atl. 395; *Louisville & Nashville R. R. Co.* v. *Ritchel*, 148 Ky. 701, 147 S. W. 411, 41 L. R. A. (n. s.) 958, Ann. Cas. 1913E, 517; *Plotnik* v. *Rosenberg*, 55 Cal. App. 408, 203 Pac. 438.)"

In *Jones* v. *West Side Buick Co.*, 231 Mo. App. 187, 93 S. W. (2d) 1083, the court upheld a verdict of $150 actual damages and $2,000 punitive damages. In that case the defendant had sold a second-hand automobile to the plaintiff and had turned

422

the speedometer back from 48,000 to 20,000 miles. In comment the court said: "The case at hand is unique in that it does not present an isolated wrong on the part of some person, attributable perhaps to passing anger or passion and unlikely to occur again, but instead it discloses the perpetration of a fraud purposely and deliberately done." (See, also, *Queen Anne Candy Co. v. F. W. Woolworth Co.*, 165 Wash. 143, 4 Pac. (2d) 844.)

In view of the cases cited herein, we cannot come to the conclusion that the verdict is excessive.

The plaintiff has made a cross-assignment of error raising the question whether the court erred in granting the motion of the defendants Diffenbacher and Proffitt for a directed verdict, and ordering judgment in their favor for costs. This contention is not properly before this court under section 9751, Revised Codes. This section has application only to cases in which the respondent makes cross-assignments upon errors on rulings adverse to him and preserved in a bill of exceptions, in order to enable this court to determine whether those complained of by the appellant were compensated or rendered harmless by reason of them. (*In re Silver's Estate*, 98 Mont. 141, 38 Pac. (2d) 277; *Stranahan* v. *Independent Natural Gas Co.*, 98 Mont. 597, 41 Pac. (2d) 39.)

The plaintiff also complains of a judgment for costs against it in favor of two other defendants. This contention and the one last considered, should have been presented by cross-appeal.

We have examined the other contentions of the defendant and find them without merit. The opinion promulgated on December 31, 1938, is withdrawn and this one substituted therefor.

The judgment against the F. W. Woolworth Company is affirmed. Remittitur forthwith.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN and STEWART concur.

MR. JUSTICE MORRIS:

I dissent. Actionable malice is not shown and in its absence exemplary damages are not justified.

If one party believes another is infringing upon his rights to his injury, a decent regard for fairness and justice requires that the offending party be given notice and an opportunity to make amends. No knowledge or advice is shown by the record to have been conveyed to the defendant that he was injuring the plaintiff in any manner. V. Truzzolino testified that he saw the advertisement relative to his tamales in defendant's show window more than once but just laughed and said nothing by way of remonstrance to defendant. In the circumstances as shown, it appears to me that defendant might well have been in ignorance of the alleged injury. He testified that he had "gone broke" and has assigned his property for the benefit of creditors. Prior to such failure he had been engaged in the restaurant and tamale business, the making of tamales usually being left to his nephew, and, in some instances, the nephew delivered tamales to customers in the city of Butte. After assigning his property as mentioned, V. Truzzolino engaged in the production of tamales to some extent at his home, and later organized the plaintiff corporation. About that time the nephew went into the tamale business for himself and the defendant became a regular customer of the nephew. In the absence of any complaint on the part of the plaintiff it appears not unreasonable to assume that the defendant may have believed that in buying the nephew's product it was getting the same kind of tamales it had acquired from the plaintiff, when the nephew was plaintiff's foreman. In other words, it appears to me that any injury suffered by the plaintiff from the acts of the defendant was rather from oversight than from malice or wilfulness, and exemplary damages, as a rule must be based upon some act or acts that involve malice or a similar element.'

The rule, I think, is well expressed in section 132 of 8 R. C. L., where it is said: "While every legal wrong entitles the party injured to recover damages sufficient to compensate for the injury inflicted, not every legal wrong entitles the injured party to recover exemplary damages. To warrant the allowance of such damages the act complained of must not only be unlawful,

but it must also partake somewhat of a criminal or wanton nature. And so it is an almost universally recognized rule that such damages may be recovered in cases, and in only such cases, where the wrongful act complained of is characterized by some such circumstances of aggravation as wilfulness, wantonness, malice, oppression, brutality, insult, recklessness, gross negligence, or gross fraud on the part of the defendant."

It was said in *Wray* v. *Great Falls Paper Co.*, 72 Mont. 461, 234 Pac. 486, 487: "Malice, like envy, love, or hate, is a concept of the mind, a term understood generally but one which practically defies definition. Our Codes do not, in terms at least, recognize any different kinds, grades, or degrees of malice; but they do recognize malice itself, and declare that the terms imports 'a wish to vex, annoy, or injure another person, or an intent to do a wrongful act,' and that the existence of malice may be 'established either by proof or presumption of law.' (Sec. 10713, Rev. Codes.) In other words, this statute deals with the characteristics of malice and the different means by which the existence of malice may be established; but, when once established, the result is the existence of, not malice in law, nor malice in fact, but of just malice.

"Generally, the existence of malice must be established by evidence, direct or circumstantial, but there are exceptions to the rule; for example, in the law of criminal libel 'an injurious publication is presumed to have been malicious if no justifiable motive for making it is shown.' (Section 10991, Rev. Codes.) And again, 'a malicious and guilty intent' is presumed 'from the deliberate commission of an unlawful act, for the purpose of injuring another,' and this presumption is made conclusive. (Sec. 10605.)"

The testimony throughout is in sharp conflict as to what was represented to parties who obtained tamales at the defendant's luncheonette. There is testimony to the effect that a party called for and purchased a small assortment of tamales and the purchase slip made out by the clerk did not specify the kind of tamales, whereupon the purchaser requested that the name

"Truzzolino" tamales be entered on the slip, and he was advised that they were not Truzzolino tamales, but at the purchaser's request the name was inserted for the reason, as it was stated, that he desired to present them to another party and such other party did not care for any other kind. This testimony, it appears, was given weight in determining that the defendant wilfully injured the plaintiff. I think any such representations of that nature made by an employee of the defendant company were outside of the scope of the employee's business and not binding upon the defendant.

Cooley on Torts, in Volume III, fourth edition, section 393, says: "But the liability of the master for intentional acts which constitute legal wrong can only arise when that which is done is within the real or apparent scope of the master's business. It does not arise where the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do."

The judgment should be reversed and the cause remanded with instruction to eliminate the amount allowed for exemplary damages.